Thomas M. Hanson, State Bar No. 184465
hanson@loevy.com
Mike Kanovitz, *pro hac vice* application forthcoming
mike@loevy.com
Jordan Poole, *pro hac vice* application forthcoming
poole@loevy.com
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 (phone)
(312) 243-5902 (fax)

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK FLORA, ERIC MATSON, NATHAN STONER, COURTNEY OWENS, and D.J., A MINOR CHILD, individually and on behalf of similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> PRISMA LABS, INC., <br><br> Defendant. | Civil Action No. _____ <br><br> **COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF** <br><br> **CLASS ACTION** <br><br> **DEMAND FOR JURY TRIAL** |

LOEVY & LOEVY
Attorneys at Law

**INTRODUCTION**

1.    Defendant Prisma Labs, Inc., is a company that develops mobile apps for editing and stylizing digital images and videos. The company's "Lensa" app is specific to facial images, marketed to allow users to upload their "selfies" (or other photos of themselves) for editing and retouching. The Lensa app was first introduced in 2018, but it exploded in popularity in November of 2022 with the launch of the "magic avatar" feature, which requires a user to upload a number of selfies or facial images to function. The app then processes the images to create an artistic image, which the user can then post on social media. In the process of creating the "magic avatars," Prisma collects the facial geometry associated with the uploaded images. It then uses that facial geometry not only to create the "magic avatar," but also to train its neural network algorithms to, in Prisma's words, "perform better and show [the user] better results."

2.    Plaintiffs Jack Flora, Eric Matson, Nathan Stoner, Courtney Owens, and D.J., a minor child, are individuals who have had their facial geometry collected through the Lensa app. Plaintiffs, individually and on behalf of all other persons similarly situated, upon personal knowledge of the facts pertaining to them and on information and belief based upon the investigation of counsel as to all other matters, by and through undersigned counsel, bring this class action complaint against Defendant.

**II. THE PARTIES**

**The Plaintiffs**

3.    Plaintiff Jack Flora is and at all relevant times was, a resident of Illinois. Between December 2, 2022 and December 14, 2022, Flora downloaded the Lensa app, received disclosure of the then-current Lensa Privacy Policy, and agreed to the then-current Lensa Terms of Use.  Plaintiff Flora brings this action on behalf of himself and all others similarly situated.

4.     Plaintiff Eric Matson is and at all relevant times was, a resident of Illinois. Between December 2, 2022 and December 14, 2022, Matson downloaded the Lensa app, received disclosure of the then-current Lensa Privacy Policy, and agreed to the then-current Lensa Terms of Use.  Plaintiff Matson brings this action on behalf of himself and all others similarly situated.

5.     Plaintiff Nathan Stoner is and at all relevant times was, a resident of Illinois. Between December 2, 2022 and December 14, 2022, Stoner downloaded the Lensa app, received disclosure of the then-current Lensa Privacy Policy, and agreed to the then-current Lensa Terms of Use.  Plaintiff Stoner brings this action on behalf of himself and all others similarly situated.

6.     Plaintiff Courtney Owens is and at all relevant times was, a resident of Illinois. Between December 2, 2022 and December 14, 2022, Owens downloaded the Lensa app, received disclosure of the then-current Lensa Privacy Policy, and agreed to the then-current Lensa Terms of Use.  Plaintiff Owens brings this action on behalf of herself and all others similarly situated.

7.     Plaintiff D.J., a minor child, is and at all relevant times was, a resident of Illinois. Between December 2, 2022 and December 14, 2022, D.J. downloaded the Lensa app, received disclosure of the theni-current Lensa Privacy Policy, and agreed to the then-current Lensa Terms of Use.  Plaintiff D.J. brings this action on behalf of himself and all others similarly situated.

**The Defendant**

8.     Defendant Prisma Labs, Inc., is and at all relevant times was, a Delaware corporation with its principal place of business in Sunnyvale, California.

### III. JURISDICTION AND VENUE

9.     This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1332(d) & 1367 because: (i) this is a class action in which the matter in

controversy exceeds the sum of $5,000,000, exclusive of interest and costs; (ii) there are 100 or more class members; and (iii) some members of the class are citizens of states different from the Defendant.

10.     This Court has personal jurisdiction over Defendant because: (i) it transacts business in this District; (ii) it has substantial aggregate contacts in this District; (iii) it engaged, and continues to engage in, conduct that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons in this District.

11.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to the claims alleged herein occurred in this District. Additionally, venue is proper under 28 U.S.C. § 1391(b)(3) because this Court has personal jurisdiction over Defendant.

# IV. BACKGROUND

12.     Founded in 2016, Prisma initially launched an eponymously named app, Prisma. The app was available on the Apple AppStore for iPhone users and on Google Play for Android users.

13.     Two years later, in late 2018, Prisma launched its second product, Lensa.

14.     While the Lensa app had been available to users for several years prior to this lawsuit, its popularity skyrocketed in late November and early December of 2022 due to the launch of its "magic avatars" feature. In November, the app was downloaded 1.6 million times, up 631% from the month prior.[1] According to preliminary estimates, the app was downloaded by over 4 million people in the first

---

[1] https://techcrunch.com/2022/12/01/lensa-ai-climbs-the-app-store-charts-as-its-magic-avatars-go-viral/, attached as Exhibit 1.

LOEVY & LOEVY
Attorneys at Law

five days of December alone, during which time users spent over $8 million in the app.[2]

15.    As of December 11, 2022, Lensa was listed as the top free app on both the Apple AppStore and the Google Play Store. It was also listed as the top grossing app in the Photography category on the Play Store, and the fifth-highest grossing app in all categories (behind Google One, TikTok, Disney+ and HBO Max). Lensa's rapid rise following the release of the "magic avatars" feature is illustrated in the following graphic:



16.    While the app can be downloaded and some of its features used for free, users are directed upon launch to pay a subscription fee of $29.99 per year. A subscription entitles users to discounted purchases within the app, including discounts on the purchase of "magic avatars."

---

[2] https://www.wired.com/story/lensa-ai-magic-avatars-security-tips/#:~:text=Andrey%20Usoltsev%2C%20the%20CEO%20and,in%20an%20email%20to%20WIRED , attached as Exhibit 2.

LOEVY & LOEVY
Attorneys at Law

17.     The app's "magic avatars" feature requires users to upload at least eight photos of themselves (i.e., "selfies"). Lensa then uses the uploaded selfies to create an art-enhanced, stylized "avatar" based on the user's face. The "magic avatars" are produced in a variety of user-selected styles such as "cosmic," "anime," or "fairy princess." Users with a subscription pay $3.99 for 50 unique avatars (five variations of 10 different styles), $5.99 for 100 unique avatars (10 variations of 10 styles), or $7.99 for 200 unique avatars (20 variations of 10 styles). The prices are doubled for non-subscribed users.[3]

18.     Although the app is promoted as a means of creating a personal "magic avatar" for the user, users are not required to upload solely their own selfies for the generation of the "magic avatar" image. A user can create an avatar for anyone by uploading a collection of the non-user's images, and avatars of celebrities (not created by the celebrities themselves) have already circulated widely on social media. And there's nothing to stop a user from providing images of an ex-spouse/partner, school rival, unfriendly neighbor, or family member, even for insidious purposes. This possibility is particularly worrisome given the fact that the Lensa app often generates highly sexualized images, particularly of women, as discussed in detail *infra*.

## V. USER EXPERIENCE

19.      Once a user downloads the Lensa app from either the AppStore or Google Play and opens the app, they are prompted to agree to the Terms and Conditions and the Privacy Policy, each of which is hyperlinked.

20.     The user then clicks through several highlighted features before the app prompts them to sign up for a 7-day free trial followed by a one-year subscription via a "Try Free & Subscribe" button. The user is able to close out of the "Try Free &

---

[3] https://techcrunch.com/2022/12/10/this-week-in-apps-apple-app-stores-new-pricing-twitter-app-makers-shift-to-mastodon-debate-over-lensa-ai/,attached as Exhibit 3.

Subscribe" option, but Prisma's use of dark patterns promotes users to choose the subscription option.

21.     Once the user makes that selection, they have access to the app and its features. Regardless of whether the user purchases the subscription or proceeds to the free app, the next page takes the user to the "magic avatar" feature and invites them to "Try now."

22.     Thereafter, every time the app is opened the user is given two options: "Add photos" or "Magic Avatars." Regardless of which option is chosen, the user cannot proceed without first giving Lensa access to all photos stored on their device.

23.     After selecting the "magic avatars" feature, the user is prompted to confirm their age before using the feature.

24.     To use the magic avatars feature, the user must upload anywhere from eight to twenty photos and the user then waits for a period of time before Lensa produces the requested digital avatar portraits.

## VI. CONCERNS ABOUT LENSA

25.     Immediately after the launch of the "magic avatars" feature, users, artists, and others began raising significant concerns about the Lensa-created "magic avatars." To create the avatars, the app uses Stable Diffusion, an open-source AI model which was originally trained on 2.3 billion captioned images from the internet, including images from sites like Pinterest, Smugmug, Flickr, DeviantArt, ArtStation, Getty and Shutterstock. Many of those images are copyrighted, and artists have complained that apps using Stable Diffusion to create unique images – such as Lensa – violate the copyrights to art they have posted online. One Twitter user identified more than two dozen Lensa-created "magic avatars" – just from her own timeline,

LOEVY & LOEVY
Attorneys at Law

within a week after the feature was launched – showing the "mangled remains" of the original artist's signature.[4]

26.     In addition, users discovered that despite Lensa's Terms of Use mandating a "no nudes" policy, the app would generate sexualized images from images containing nothing but fully-clothed images. Multiple news outlets ran experiments to test this theory, and discovered "it's possible – and way too easy – to use the platform to generate non-consensual soft porn."[5] One reporter noted not only that the app generated nude images, but did so even when the photos uploaded were images from her childhood – results which she described as "horrifying."[6] The same reporter also recounted users receiving avatars which ascribed "cartoonishly sexualized features, like sultry poses and gigantic breasts, to their images," and anglicized facial features and skin tone for images of people of color.[7]

27.     Another apparent concern has received far less attention: Lensa's invasion of the privacy rights of the individuals whose images are uploaded. Specifically, as discussed in detail below, Prisma uses Lensa to capture the facial geometry of the subjects of the images, and uses that information to train its neural network(s) and thereby improve the app. All of which, of course, leads to greater revenue and profits for Prisma. And all of which, as detailed below, is done in knowing violation of the law.

## VI. BIOMETRICS

28.     In 2008, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* This was due to the "very serious need [for]

---

[4] https://twitter.com/LaurynIpsum/status/1599953586699767808?s=20&t=3VynzarfXwitf1JYfL8Eqg
[5] https://techcrunch.com/2022/12/06/lensa-goes-nsfw/, attached as Exhibit 4; see also https://www.technologyreview.com/2022/12/12/1064751/the-viral-ai-avatar-app-lensa-undressed-me-without-my-consent/, attached as Exhibit 5.
[6] https://www.wired.com/story/lensa-artificial-intelligence-csem/, attached as Exhibit 6.
[7] *Id.*

LOEVY & LOEVY
Attorneys at Law

protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276. The Illinois Legislature recognized the importance of protecting the privacy of individuals' biometric data, finding that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information." 740 ILCS 14/5(c). "For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse [and] is at heightened risk for identity theft …." *Id.*

29.     BIPA thus focuses on "biometric identifiers" and "biometric information." Biometric identifiers consist of "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10. A "scan" under BIPA means to examine by observation or checking, or systematically in order to obtain data especially for display or storage. "Geometry" under BIPA is the relative arrangement of parts or elements. Neither the term "scan" nor the term "geometry" requires actual or express measurements of spatial quantities like distance, depth, or angles. Biometric information constitutes "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10.

30.     Defendant collects, possesses, stores, uses, and profits from the Plaintiffs' biometric identifiers—namely, scans of their face geometry. These identifiers are then tagged to their access devices and used as biometric information.

**VI. PRISMA'S COLLECTION AND CAPTURE OF BIOMETRIC INFORMATION THROUGH THE LENSA APP**

31.     As detailed in the following paragraphs, Prisma (1) collects the photo subject's biometric data (facial geometry) in an non-anonymized fashion; (2) offers a confusing and false disclosure of its collection practices; (3) retains the subject's

biometric data in a non-anonymized fashion, (4) retains that data indefinitely for uses wholly unrelated to the user's purpose for using Lensa, (5) profits from the biometrics; and (6) has no public written policy for the deletion of that data.

32. Prisma purports to disclose its collection and capture of user information through Lensa in its Privacy Policy.

33. The Lensa Privacy Policy has been frequently updated in months prior to the filing of this Complaint; first on June 6, 2022, again on November 14, 2022 (just prior to the "magic avatars" launch), again on December 2, 2022 (just after the launch when it was apparent Lensa was being downloaded by millions of users), and yet again on December 15, 2022.

34. Each iteration of the Privacy Policy on Lensa's website purports to link to the previously effective Privacy Policy. Curiously, however, the link on the current Privacy Policy redirects to the November 14, 2022 Privacy Policy, rather than the December 2, 2022 Privacy Policy that was disclosed to each of the named Plaintiffs.

35. Each of the named Plaintiffs herein downloaded Lensa and uploaded photos to create magic avatars when the December 2, 2022 Privacy Policy was in effect, and thus received the disclosures set forth therein when they acknowledged acceptance of the Privacy Policy. Accordingly, the Privacy Policy discussed herein is the December 2, 2022 Privacy Policy (the "Privacy Policy") unless otherwise noted.[8]

36. In its own words, the Privacy Policy purports to describe: "The types of information we may collect or that all users or others ('Users', 'you' or 'your', as applicable) may provide while downloading, installing, registering with, accessing, or otherwise using" Lensa, as well as Prisma's "practices for collecting, using,

---

[8] A true and correct copy of the December 2, 2022 Privacy Policy is attached hereto as Exhibit 7. True and correct copies of the December 15, 2022 Privacy Policy and the November 14, 2022 Privacy Policy – i.e., each of the policies in effect during the lifetime of the magic avatar feature – are attached hereto as Exhibits 8 and 9, respectively.

LOEVY & LOEVY
Attorneys at Law

maintaining protecting, and disclosing that information." To emphasize the point, the Privacy Policy further provides, "**Please read this Privacy Policy carefully to understand our policies and practices regarding your information and how we will treat it. The purpose of our Privacy Policy is to explain what data we collect, how it is used and shared, and how you can control it. If you do not want us to process your Personal Data as it is described in this Privacy Policy, please do not Use Lensa.**" (emphasis in original).

37.     Despite this stated purpose, the Privacy Policy fails to disclose the biometric data and other information Prisma collects from its users and from the images uploaded through Lensa.

38.     For example,  Section 2, "Information You Provide To Us Directly," purports to disclose the information Prisma collects directly from its users. The section provides the following list: (1) photos and videos; (2) the user's gender; (3) information provided by interacting with the app (such as filling in forms, requesting services, reports of technical issues, and the like); (4) details of in-app subscriptions; and (5) correspondence from the user.

39.     Notably absent from this list is any reference to the facial geometry used to create the magic avatars. Thus, in the very paragraphs that purport to identify the information collected from users, Prisma deliberately fails to disclose that it is collecting its users' biometric data.

40.     The policy later obliquely references facial geometry in Section 4, which describes "How We Process Your Photos And Videos." The Privacy Policy states that Prisma "will process (provided by you) human face images (photo or video) through TrueDepth API technologies that will provide us information about such human faces' position, orientation and their topology on your image and/or video frame." However, the policy falsely indicates that facial geometry data is not collected supposedly

LOEVY & LOEVY
Attorneys at Law

because it never leaves the user's device, and also that the user's biometric data is "anonymized: "What we see is only the anonymized information, as described above, about the technical characteristics of the photo (faces' position, orientation, their topology on your image and/or video frame)."

41.     This statement simply cannot be true; if it were, Prisma would not be able to create realistic avatars of the user's face and then return the processed avatars to the user's device. Stated another way, the user's identity and facial geometry must be collected in an identifiable way in order for Prisma to deliver its product to the user. Thus, the Privacy Policy admits that Prisma uses the "technical characteristics of the photo (faces' position, orientation, their topology on your image and/or video frame)" – i.e., a scan of the user's facial geometry – to create the magic avatars. But at the same time, Prisma both disavows that Prisma collects and stores this data and also does not disclose that the user's biometric identifiers and biometric information are not anonymized.  Therefore, Prisma does collect biometric identifiers and biometric information when creating and supplying avatars, but it does not disclose these practices to its users.

42.     The falsity of the purported anonymization of the subject's biometric data is further confirmed by use of the phrase, "as described above." The only prior reference to an anonymization process is in Section 3, which describes the anonymization process for the user's non-biometric data, such as IP address, unique device identifier, traffic data, logs and other communication data. The Privacy Policy confirms that this anonymization process applies only to the data described in Section 3, and not to the biometric data described in Section 4: "We have a process in place to anonymize data **specified in this Section 3** fully by erasing identifiers that connect you to stored data." (emphasis added).

43.     The Privacy Policy goes on to state that Prisma collects "Face Data" but defines the term to include data that the policy already said Prisma does *not* collect – i.e. biometric information extracted from photos: "Images (photo or video), that you provide us in or through Lensa, <u>and/or other information related to human faces obtained from your images</u> (photo or video) and/or using TrueDepth API technologies, such as ARKit, are the **'Face Data'**. The Face Data shall be considered the Personal Data[.]" (underline added; bolded text in original). Both TrueDepth and ARKit use facial geometry to process images of faces.[9] Conflating photographs and "other information related to human faces" is not a disclosure of the fact that Prisma is collecting biometric identifiers and biometric information.

44.     The contradictions continue in the next paragraph, which provides:

> We collect and store your Face Data for online processing function. We also share and transfer the Face Data off the User devices to our cloud providers (Google Cloud Platform and Amazon Web Services) for the same purpose in which case, the photos: (i) become available to us in an anonymized manner (we get information about your pose, orientation and the topology on your image and/or video frame) and (ii) are automatically deleted within 24 hours after being processed by Lensa. In case of using Magic Avatars feature, the photos are automatically deleted after the AI results are generated.

45.     As the above excerpted language shows, Prisma fails to establish/inform the users of a retention schedule for the destruction of biometric identifiers and information, much less for permanently destroying such data within the statutorily-required time periods.  Rather, Prisma's policy only mentions destruction of

---

[9] *See* https://support.apple.com/en-us/HT208108 (TrueDepth "captures accurate face data by projecting and analyzing thousands of invisible dots to create a depth map of your face and also captures an infrared image of your face") (copy attached as Exhibit 10); https://developer.apple.com/documentation/arkit/content_anchors/tracking_and_visualizing_faces ("ARKit provides a coarse 3D mesh geometry matching the size, shape, topology, and current facial expression of the user's face") (copy attached as Exhibit 11).

LOEVY & LOEVY
Attorneys at Law

photographs, not of the biometric data associated with the user and biometric data obtained from the photographs.

46.    The policy also fails to disclose the ways in which Prisma profits from the biometric data. Section 5 states that the company uses the photos it collects to train its AI without disclosing that it is in fact extracting the users' biometric identifiers from the photos to do so.  "To train our neural network algorithms. We use your photos and videos to train our algorithms to perform better and show you better results. We have a legitimate interest to do so, and we do our best to minimise [sic] the data that we receive and not to override the rights and freedoms of the users in this regard."

47.    Notably, this bullet point was not included in the Privacy Policy prior to the December 2, 2022 update, and it is not included in the December 15, 2022 Privacy Policy. It is telling that the clearest statement made by Prisma that it is collecting users' biometric identifiers and biometric information and retaining such data for an indeterminate period of time – accompanied only by a vague assurance that "we do our best" to protect such data – was quickly excised from the Privacy Policy. Even worse, by failing to include the December 2, 2022 Privacy Policy in the iterative "see our previous Privacy Policy" links on its website, Prisma is not only currently failing to disclose these practices, but is intentionally keeping users from finding out.

48.    Thus, in the course of making a great deal of money from providing its users with "magic avatars" that raise concerns ranging from copyright violations to the potential creation of  child sexual exploitation material, Prisma is also acquiring vast amounts of individual's biometric data without disclosing that fact, nor its purposes for the data, nor how it stores the data, nor how long it retains data, nor of the uses it makes of the data, nor its profiting from the data. Moreover, Prisma is profiting from the data and is failing to obtain "a written release executed by the

LOEVY & LOEVY
Attorneys at Law

subject of the biometric identifier or biometric information or the subject's legally authorized representative." Prisma is violating BIPA in each of these respects.

## VI. CLASS ALLEGATIONS

49. Plaintiffs seek certification of the class set forth herein pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"). Specifically, Plaintiffs seek class certification of all claims for relief herein on behalf of a class defined as follows: All persons who reside in Illinois whose biometric data was collected, captured, purchased, received through trade, or otherwise obtained by Prisma, either through use of the Lensa app or otherwise. Plaintiffs are the proposed class representatives for the Class.

50. Plaintiffs reserve the right to modify or refine the definition of the Class, including right to identify and define Subclasses as necessary.

51. Excluded from the Class are: **(i)** any judge or magistrate judge presiding over this action and members of their staff, as well as members of their families; **(ii)** Defendant, Defendant's predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendant or its parents have a controlling interest, as well as Defendant's current or former employees, agents, officers, and directors; **(iii)** persons who properly execute and file a timely request for exclusion from the class; **(iv)** persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; **(v)** counsel for Defendant; and **(vi)** the legal representatives, successors, and assigns of any such excluded persons.

52. **Ascertainability**: The proposed Class is readily ascertainable because it is defined using objective criteria so as to allow Class members to determine if they are part of the Class. Further, the Class can be readily identified through records maintained by Defendant.

53. **Numerosity (Rule 23(a)(1))**: The Class is so numerous that joinder of individual members herein is impracticable. The exact number of Class members as herein identified and described, is not known, but download figures indicate that at least 8.2 million people have downloaded Lensa since the release of the "magic avatars" feature.

54. **Commonality (Rule 23(a)(2))**: Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class members including the following:

    a. Whether Defendant's activities and practices referenced above constitute a violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, et seq;

    b. Whether Defendant's activities and practices referenced above constitute unjust enrichment concerning which restitution and/or disgorgement is warranted;

    c. Whether Plaintiffs and members of the Class sustained damages as a result of Defendant's activities and practices referenced above, and if so, in what amount.

    d. What constitutes appropriate injunctive relief to make sure Plaintiffs' biometric information is not collected without their notice or consent and that Prisma otherwise complies with BIPA.

55. **Typicality (Rule 23(a)(3))**: Plaintiffs' claims are typical of the claims of members of the Class, among other things, Plaintiffs and members of the Class sustained similar injuries as a result of Defendant's uniform wrongful conduct and their claims all arise from the same events and wrongful conduct by Defendant.

56. **Adequacy (Rule 23(a)(4))**: Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests do not conflict with the interests of the

Class and Class members, and Plaintiffs have retained counsel experienced in complex class action and privacy litigation to prosecute this case on behalf of the Class.

57.     **Predominance & Superiority (Rule 23(b)(3))**: In addition to satisfying the prerequisites of Rule 23(a), Plaintiffs satisfy the requirements for maintaining a class action under Rule 23(b)(3). Common questions of law and fact predominate over any questions affecting only individual Class members, and a class action is superior to individual litigation and all other available methods for the fair and efficient adjudication of this controversy. The amount of damages available to Plaintiffs is insufficient to make litigation addressing Defendant's conduct economically feasible in the absence of the class action procedure. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense presented by the complex legal and factual issues of the case to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

58.     **Final Declaratory or Injunctive Relief (23(b)(2)):** Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(b)(2). Defendant has acted or refused to act on grounds that apply generally to the Class, making final declaratory and/or injunctive relief appropriate with respect to the Class as a whole.

59.     **Particular Issues (Rule 23(c)(4))**: Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(c)(4). Their claims consist of particular issues that are common to all Class members and are capable of class-wide resolution that will significantly advance the litigation.

# VII. CAUSES OF ACTION

## FIRST CAUSE OF ACTION
### Violation of Illinois Biometric Information Privacy Act, 740 ILCS 14/15(a)

60.     Plaintiffs repeat and incorporate by reference all preceding paragraphs as if fully set forth herein.

**61.**     Section 15(a) of BIPA requires that a "private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first."

62.     Defendant is a "private entity" as defined in section 10 of BIPA.

63.     The facial geometry collected by Defendant are "biometric identifiers" and "biometric information" as defined in section 10 of BIPA.

64.     Defendant is in possession of the Plaintiffs' and Class members' biometric identifiers and biometric information.

65.     As detailed herein, Defendant has not established a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying Plaintiffs' and the Class members' biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

66.     To the contrary, Defendant's written policy for deletion of information collected from Lensa users and otherwise, fails to disclose that Prisma possesses the Plaintiffs' and Class Members' biometric identifiers or information and expressly

LOEVY & LOEVY
Attorneys at Law

excludes reference to biometric identifiers and biometric information in discussing its retention practices. In other words, Defendant has no written policy for deletion of Plaintiffs' and Class Members' biometric identifiers and biometric information.

67.     By failing to develop a publicly-available written policy for the deletion of Plaintiffs' and Class Members' biometric identifiers and biometric information, and by instead retaining such data indefinitely, Defendant recklessly or intentionally (or, in the alternative, negligently) violated the requirements of BIPA section 15(a), thereby infringing on Plaintiffs' and Class members' rights to keep their immutable and uniquely identifying biometric identifiers and biometric information private. As individuals subjected to this violation of BIPA, Plaintiffs and the Class members have been aggrieved.

## SECOND CAUSE OF ACTION
### Violation of Illinois Biometric Information Privacy Act, 740 ILCS 14/15(b)(1)

68.     Plaintiffs repeat and incorporate by reference all preceding paragraphs as if fully set forth herein.

69.     Section15(b)(1) of BIPA provides, "No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first … informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored."

70.     As detailed herein, Defendant has collected, captured, purchased, received through trade or otherwise obtained Plaintiffs' and Class members' biometric identifiers or biometric information, without informing Plaintiffs and Class members that a biometric identifier or biometric information was being collected or stored.

71.     Specifically, at no point does Defendant's Privacy Policy use the terms "facial geometry" or "biometric," or otherwise inform Plaintiffs that the information

collected by Defendant is a unique and immutable identifier that may be used to identify Plaintiffs for the rest of their life, and which data, if stolen, may be used to impersonate Plaintiffs and the Class members or otherwise steal their identity.

72.    Defendant also misrepresent that the biometric data collected is anonymized, creating a false sense of security for Plaintiffs and the Class that their biometric information cannot be used in the future to identify and/or impersonate them.

73.    Accordingly, Defendant has not informed Plaintiffs in writing that their biometric identifiers or biometric information is being collected or stored.

74.    By failing to inform Plaintiffs and Class Members in writing that their biometric identifiers and biometric information are being collected and stored, Defendant recklessly or intentionally (or, in the alternative, negligently) violated the requirements of BIPA section 15(b)(1), thereby infringing on Plaintiffs' and Class members' rights to keep their immutable and uniquely identifying biometric identifiers and biometric information private. As individuals subjected to this violation of BIPA, Plaintiffs and the Class members have been aggrieved.

## THIRD CAUSE OF ACTION
### Violation of Illinois Biometric Information Privacy Act, 740 ILCS 14/15(b)(2)

75.    Plaintiffs repeat and incorporate by reference all preceding paragraphs as if fully set forth herein.

76.    Section15(b)(2) of BIPA provides, "No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first … informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used."

LOEVY & LOEVY
Attorneys at Law

77.     As detailed herein, Defendant has collected, captured, purchased, received through trade or otherwise obtained Plaintiffs' and Class members' biometric identifiers or biometric information, without informing Plaintiffs and Class members of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored and used.

78.     To the contrary, as detailed above, Defendant intentionally suggests that Defendant deletes Plaintiffs' and Class members' biometric data within 24 hours of creating a "magic avatar," when in fact Plaintiffs' and Class members' biometric data is retained indefinitely to train Defendant's neural network algorithm.

79.     Accordingly, Defendant has not informed Plaintiffs and Class members in writing of the specific purpose and length of term for which their biometric identifiers or biometric information is collected or stored.

80.     By failing to inform Plaintiffs and Class Members in writing of the specific purpose and length of term for which their biometric identifiers and biometric information are being collected and stored, Defendant recklessly or intentionally (or, in the alternative, negligently) violated the requirements of BIPA section 15(b)(2), thereby infringing on Plaintiffs' and Class members' rights to keep their immutable and uniquely identifying biometric identifiers and biometric information private. As individuals subjected to this violation of BIPA, Plaintiffs and the Class members have been aggrieved.

## FOURTH CAUSE OF ACTION
## Violation of Illinois Biometric Information Privacy Act, 740 ILCS 14/15(b)(3)

81.     Plaintiffs repeat and incorporate by reference all preceding paragraphs as if fully set forth herein.

82.     Section15(b)(3) of BIPA provides, "No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a

LOEVY & LOEVY
Attorneys at Law

customer's biometric identifier or biometric information, unless it first … receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative."

83.    As detailed herein, Defendant has collected, captured, purchased, received through trade or otherwise obtained Plaintiffs' and Class members' biometric identifiers or biometric information, without receiving a written release executed by Plaintiffs and Class members.

84.    By failing to obtain a written release authorizing the collecting and storing of Plaintiffs' and Class Members' biometric information, Defendant recklessly or intentionally (or, in the alternative, negligently) violated the requirements of BIPA section 15(b)(3), thereby infringing on Plaintiffs' and Class members' rights to keep their immutable and uniquely identifying biometric identifiers and biometric information private. As individuals subjected to this violation of BIPA, Plaintiffs and the Class members have been aggrieved.

## FIFTH CAUSE OF ACTION
### Violation of Illinois Biometric Information Privacy Act, 740 ILCS 14/15(c)

85.    Plaintiffs repeat and incorporate by reference all preceding paragraphs as if fully set forth herein.

86.    Section15(c) of BIPA provides, "No private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information."

87.    As detailed herein, Defendant has profited and continues to profit from its collection of Plaintiffs' and Class members' biometric identifiers or biometric information, specifically by using such information to improve the Lensa app and, on information and belief, other Prisma products.

LOEVY & LOEVY
Attorneys at Law

88.     By profiting from the collecting and storing of Plaintiffs' and Class Members' biometric identifiers and biometric information, Defendant recklessly or intentionally (or, in the alternative, negligently) violated the requirements of BIPA section 15(c), thereby infringing on Plaintiffs' and Class members' rights to keep their immutable and uniquely identifying biometric identifiers and biometric information private. As individuals subjected to this violation of BIPA, Plaintiffs and the Class members have been aggrieved.

**SIXTH CAUSE OF ACTION**
**Violation of Illinois Biometric Information Privacy Act, 740 ILCS 14/15(d)**

89.     Plaintiffs repeat and incorporate by reference all preceding paragraphs as if fully set forth herein.

90.     Section15(d) of BIPA provides, "No private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information" absent disclosure of such practice and the customer's consent.

91.     As detailed herein, Defendant discloses, rediscloses, or otherwise disseminates Plaintiffs' and Class members' biometric identifiers or biometric information, specifically by transferring such biometric data to third-party cloud servers and, on information and belief, through other means. Such disclosure, redisclosure and/or dissemination is not disclosed to Plaintiffs and the Class members, nor have Plaintiffs or Class members consented to such disclosure, redisclosure and/or dissemination.

92.     By disclosing, redisclosing and/or disseminating Plaintiffs' and Class Members' biometric identifiers and biometric information, Defendant recklessly or intentionally (or, in the alternative, negligently) violated the requirements of BIPA section 15(d), thereby infringing on Plaintiffs' and Class members' rights to keep their

LOEVY & LOEVY
Attorneys at Law

immutable and uniquely identifying biometric identifiers and biometric information private. As individuals subjected to this violation of BIPA, Plaintiffs and the Class members have been aggrieved.

## SEVENTH CAUSE OF ACTION
### Violation of Illinois Biometric Information Privacy Act, 740 ILCS 14/15(e)

93. Plaintiffs repeat and incorporate by reference all preceding paragraphs as if fully set forth herein.

94. Section 15(e) of BIPA provides, "A private entity in possession of a biometric identifier or biometric information shall (1) store, transmit, and protect from disclosure all biometric identifiers and biometric information using the reasonable standard of care within the private entity's industry; and (2) store, transmit, and protect from disclosure all biometric identifiers and biometric information in a manner that is the same as or more protective than the manner in which the private entity stores, transmits, and protects other confidential and sensitive information."

95. On information and belief, Defendant stores, transmits and protects Plaintiffs' and Class members' biometric identifiers or biometric information meets neither the reasonable industry standard of care nor the standard by which Prisma stores, transmits, and protects other confidential and sensitive information.

96. By failing to store, transmit and protect from disclosure Plaintiffs' and Class Members' biometric identifiers and biometric information according to industry standard or its own internal standards, Defendant recklessly or intentionally (or, in the alternative, negligently) violated the requirements of BIPA section 15(e), thereby infringing on Plaintiffs' and Class members' rights to keep their immutable and uniquely identifying biometric identifiers and biometric information private. As individuals subjected to this violation of BIPA, Plaintiffs and the Class members have been aggrieved.

LOEVY & LOEVY
Attorneys at Law

1
2

## EIGHTH CAUSE OF ACTION
### Unjust Enrichment

3
4

97.    Plaintiffs repeat and incorporate by reference all preceding paragraphs as if fully set forth herein.

5
6
7
8

98.    Plaintiff and Class Members conferred a monetary benefit on Defendant– namely, among other things, Defendant used their biometric identifiers and biometric information to increase its user base and the number of users paying for Defendant's services.

9
10
11

99.    Plaintiff and Class Members did not authorize or otherwise consent to Defendant unlawfully collecting, disclosing and/or using their biometric identifiers or biometric information.

12
13
14
15
16
17
18

100.    Defendant appreciated, accepted and retained the benefit bestowed upon it under inequitable and unjust circumstances arising from Defendant's conduct toward Plaintiff and Class Members as described herein – namely: (a) Plaintiff and Class Members conferred a benefit on Defendant, and Defendant accepted or retained that benefit; and (b) Defendant used Plaintiff's and Class Members' personal information for business purposes – namely, it collected, disclosed and used the information to increase its revenues.

19
20

101.    Defendant did not provide full compensation for the benefit Plaintiff and Class Members conferred upon it.

21
22
23

102.    Defendant acquired Plaintiff's and Class Members' personal information through inequitable means in that it misrepresented the purpose for which it obtained the information and how it would use that information.

24

103.    Plaintiff and Class Members have no adequate remedy at law.

25
26
27
28

LOEVY & LOEVY
Attorneys at Law

104.   Under the circumstances, it would be unjust and unfair for Defendant to be permitted to retain any of the benefits that Plaintiff and Class Members conferred on it.

105.   Under the principles of equity and good conscience, Defendant should not be permitted to retain the personal information belonging to Plaintiff and Class Members because Defendant obtained that information under false pretenses.

106.   Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that it unjustly received from the sale of Plaintiff's and Class Members' personal information.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Jack Flora, Eric Matson, Nathan Stoner, Courtney Owens, and D.J., a minor child, individually and on behalf of the all Class Members, respectfully seek from the Court the following relief:

    a.    Certification of the Class as requested herein;

    b.    Appointment of Plaintiffs as Class representative and their undersigned counsel as Class counsel;

    c.    Award Plaintiff and members of the proposed Class damages;

    d.    Award Plaintiff and members of the proposed Class equitable, injunctive and declaratory relief;

    e.    Award Plaintiff and members of the proposed Class pre-judgment and post-judgment interest as permitted by law;

    f.    Award Plaintiff and members of the proposed Class reasonable attorneys' fees and costs of suit; including expert witness fees; and

LOEVY & LOEVY
Attorneys at Law

g.      Award Plaintiff and members of the proposed Class any further relief the Court deems proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial on all claims so triable.

Dated: February 15, 2023

Respectfully submitted,

/s/ Thomas M. Hanson
*One of Plaintiffs' Attorneys*

Thomas M. Hanson (hanson@loevy.com)
Mike Kanovitz (mike@loevy.com)*
Jon Loevy (jon@loevy.com)*
Jordan Poole (poole@loevy.com)*
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 (phone)
(312) 243-5902 (fax)
*Counsel for Plaintiff*

* *Pro hac vice* application forthcoming

LOEVY & LOEVY
Attorneys at Law