Brenda R. Sharton (admitted *Pro Hac Vice*)
DECHERT LLP
One International Place, 40th Floor
100 Oliver Street
Boston, MA  02110-2605
Telephone:  (617) 728-7100
Facsimile:  (617) 275-8374
brenda.sharton@dechert.com

Benjamin M. Sadun (Bar No. 287533)
DECHERT LLP
US Bank Tower
633 West 5th Street, Suite 4900
Los Angeles, CA  90071-2032
Telephone:  (213) 808-5700
Facsimile:  (213) 808-5760
benjamin.sadun@dechert.com

Theodore E. Yale (*Pro Hac Vice* forthcoming)
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
Telephone:  (215) 994-4000
Facsimile:  (215) 655-2455
theoore.yale@dechert.com

*Attorneys for Defendant Prisma Labs, Inc.*

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JACK FLORA, ERIC MATSON, NATHAN STONER, COURTNEY OWENS, and D.J., A MINOR CHILD, individually and on behalf of similarly situated individuals,<br><br>                                   Plaintiffs,<br><br>    v.<br><br>PRISMA LABS, INC.,<br><br>                                   Defendant. | Case No.: 3:23-cv-00680-CRB<br><br>**DEFENDANT PRISMA LABS, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>COMPLAINT FILED: February 15, 2023<br><br>Date:        July 28, 2023<br>Time:       10:00 A.M.<br>Dept.:       Courtroom 6 – 17th Floor<br>Judge:      Honorable Charles R. Breyer |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on July 28, 2023, at 10:00 A.M., or at the Court's earliest convenience thereafter, before the Honorable Charles R. Breyer, Defendant Prisma Labs, Inc. ("Prisma") will and hereby does move the Court under the Federal Arbitration Act, 9 U.S.C. §§ 1-16, for an order compelling Plaintiffs to arbitrate their claims against Prisma in accordance with the Parties' Arbitration Agreement. Prisma's motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Benjamin M. Sadun and exhibits attached thereto, any reply memorandum that Prisma may file, any arguments of counsel, and any other matter that the Court deems appropriate.

<strong>RELIEF REQUESTED</strong>

An order compelling Plaintiffs to arbitrate their claims against Prisma on an individual basis in accordance with the Parties' Arbitration Agreement.

<strong>ISSUES PRESENTED</strong>

Whether the Federal Arbitration Act requires the enforcement of Plaintiffs' arbitration agreement with Prisma.

Dated:  June 21, 2023

Respectfully Submitted,

By: */s/ Brenda R. Sharton*

Brenda R. Sharton (admitted *Pro Hac Vice*)
DECHERT LLP
One International Place,
100 Oliver Street, 40th Floor
Boston, MA 2110-2605
Telephone: (617) 728-7113
Facsimile: (617) 275-8374
Email: brenda.sharton@dechert.com

Benjamin M. Sadun (SBN 287533)
DECHERT LLP
633 W. 5th Street, Suite 4900
Los Angeles, CA 90071
Telephone: (213) 808-5700
Facsimile: (213) 808-5760
Email:  benjamin.sadun@dechert.com

-i-

DEFENDANT PRISMA LABS, INC.'S NOTICE OF MOTION AND MOTION TO
COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT                23-cv-00680-CRB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Theodore E. Yale (*Pro Hac Vice* forthcoming)
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-4000
Facsimile: (215) 655-2455
Email: theodore.yale@dechert.com

*Attorneys for Defendant Prisma Labs, Inc.*

DEFENDANT PRISMA LABS, INC.'S NOTICE OF MOTION AND MOTION TO
COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT          23-cv-00680-CRB

1
2

# TABLE OF CONTENTS

3

**Page**

4

SUMMARY OF ARGUMENT ...................................................................................................viii

5

INTRODUCTION ......................................................................................................................... 1

BACKGROUND ........................................................................................................................... 2

6

I.      Plaintiffs and Prisma Agreed to Arbitrate Disputes on an Individual Basis.................... 3

7

II.     Plaintiffs Filed This Putative Class Action in Federal Court Notwithstanding the
        Arbitration and Class Waiver Provisions. ........................................................................ 5

8

III.    Plaintiffs' Claims Are Frivolous and Do Not Survive as a Matter of Law. .................... 6

9

LEGAL STANDARD ................................................................................................................... 7

10

ARGUMENT ................................................................................................................................ 8

I.      The FAA Applies to the Parties' Arbitration Agreement. ............................................... 8

11

II.     The FAA Requires Plaintiffs to Arbitrate Their Claims against Prisma. ........................ 8

12

        A.      Plaintiffs Agreed to Arbitrate Claims against Prisma ......................................... 9

        B.      Plaintiffs' Claims Fall Squarely within the Arbitration Agreement. ................. 11

13

III.    The Arbitration Must Proceed on an Individual Basis. .................................................. 13

14

IV.     This Court Should Stay the Case Pending Arbitration. ................................................. 15

15

CONCLUSION............................................................................................................................ 15

16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT PRISMA LABS, INC.'S NOTICE OF MOTION AND MOTION TO
COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT                23-cv-00680-CRB

1

2

<u>**TABLE OF AUTHORITIES**</u>

3

**Page(s)**

4

**Cases**

5

*Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*,
    855 F.2d 1470 (9th Cir. 1988) ................................................................. 1

6

7

*Am. Exp. Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013) ................................................................. 14

8

9

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ................................................................. 8, 13, 14

10

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986) ................................................................. 11

11

12

*Bd. of Trustees of IBEW Loc. No. 640 v. Cigna Health & Life Ins. Co.*,
    2022 WL 2805111 (9th Cir. July 18, 2022) ................................................................. 12

13

14

*Blau v. AT&T Mobility*,
    2012 WL 10546 (N.D. Cal. Jan. 3, 2012) ................................................................. 9, 10

15

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015) ................................................................. 13

16

17

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000) ................................................................. 6, 7, 9

18

19

*Cothron v. White Castle Sys., Inc.*,
    2023 IL 128004 (Ill. 2023) ................................................................. 14

20

*Crawford v. Beachbody, LLC*,
    2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) ................................................................. 9, 11

21

22

*Daniels-Hall v. Nat'l Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010) ................................................................. 3

23

24

*DeVries v. Experian Info. Sols., Inc.*,
    2017 WL 733096 (N.D. Cal. Feb. 24, 2017) ................................................................. 9

25

*Digital Software Servs., Inc. v. Entm't Programs, Inc.*,
    2010 WL 727610 (E.D. Cal. Mar. 1, 2010) ................................................................. 12, 13

26

27

*Dohrmann v. Intuit, Inc.*,
    823 F. App'x 482 (9th Cir. 2020) ................................................................. 9, 11

28

DEFENDANT PRISMA LABS, INC.'S NOTICE OF MOTION AND MOTION TO
COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT        23-cv-00680-CRB

*Eshagh v. Terminix Int'l Co., L.P.*,
    588 F. App'x 703 (9th Cir. 2014) ................................................................................. 13, 14

*In re Facebook, Inc. Sec. Litig.*,
    477 F. Supp. 3d 980 (N.D. Cal. 2020) ................................................................................. 3

*Gellman v. Hunsinger*,
    2019 WL 13198244 (S.D. Cal. Feb. 20, 2019) .................................................................... 7

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) .............................................................................................................. 7

*Green Tree Fin. Corp.-Alabama v. Randolph*,
    531 U.S. 79 (2000) .............................................................................................................. 8

*In re Juul Labs, Inc., Antitrust Litig.*,
    555 F. Supp. 3d 932 (N.D. Cal. 2021) .............................................................................. 11

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*,
    137 S. Ct. 1421 (2017) ........................................................................................................ 9

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ............................................................................................ 2

*Lamps Plus, Inc. v. Varela*,
    139 S. Ct. 1407 (2019) ...................................................................................................... 11

*Lee v. Ticketmaster L.L.C.*,
    817 F. App'x 393 (9th Cir. 2020) ..................................................................................... 10

*Luckert v. Tesla Energy Operations, Inc.*,
    2021 WL 3721967 (N.D. Cal. Aug. 5, 2021) .................................................................... 13

*Marchand v. Northrop Grumman Corp.*,
    2017 WL 2633132 (N.D. Cal. June 19, 2017) .................................................................... 1

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017) ............................................................................................... 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ................................................................................................................ 8

*Oberstein v. Live Nation Ent., Inc.*,
    60 F.4th 505 (9th Cir. 2023) ..................................................................................... 9, 10, 11

*Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*,
    862 F.3d 981 (9th Cir. 2017) ............................................................................................ 14

*Rent-A-Ctr., W., Inc. v. Jackson*,
    561 U.S. 63 (2010) ............................................................................................................ 13

-v-

*Rodriguez v. Experian Servs. Corp.*,
    2015 WL 12656919 (C.D. Cal. Oct. 5, 2015) ........................................................ 10

*Schoenduve Corp. v. Lucent Technologies, Inc.*,
    442 F.3d 727 (9th Cir. 2006) ........................................................ 12

*Shearson/Am. Exp., Inc. v. McMahon*,
    482 U.S. 220 (1987) ........................................................ 12

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999) ........................................................ 12, 13

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) ........................................................ 14

*Swift v. Zynga Game Network, Inc.*,
    805 F. Supp. 2d 904 (N.D. Cal. 2011) ........................................................ 10

*Tompkins v. 23andMe, Inc.*,
    840 F.3d 1016 (9th Cir. 2016) ........................................................ 8

*Ulbrich v. Overstock.com, Inc.*,
    887 F. Supp. 2d 924 (N.D. Cal. 2012) ........................................................ 9

*United States v. Sutcliffe*,
    505 F.3d 944 (9th Cir. 2007) ........................................................ 8

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
    489 U.S. 468 (1989) ........................................................ 7

*Webb v. DoorDash, Inc.*,
    451 F. Supp. 3d 1360 (N.D. Ga. 2020) ........................................................ 8

*Williams v. Eaze Sols., Inc.*,
    417 F. Supp. 3d 1233 (N.D. Cal. 2019) ........................................................ 8

*Wolsey, Ltd. v. Foodmaker, Inc.*,
    144 F.3d 1205 (9th Cir. 1998) ........................................................ 9

*Xinhua Holdings Ltd. v. Elec. Recyclers Int'l, Inc.*,
    2013 WL 6844270 (E.D. Cal. Dec. 26, 2013) ........................................................ 2, 3

**Statutes and Rules**

Federal Arbitration Act, 9 U.S.C. §§ 1-16 ........................................................ *passim*

Cal. Code Civ. Proc. § 1281.2 ........................................................ 7

Cal. Code Civ. Proc. § 1281.4 ........................................................ 15

-vi-

Illinois Biometric Information Privacy Act, 740 ILCS 14/15 ...................................... 1, 6, 7, 14

Fed. R. Civ. P. 8 .......................................................................................................... 13

Fed. R. Civ. P. 12 ........................................................................................................... 1

**Other Authorities**

JAMS Streamlined Arbitration Rules & Procedures ...................................................... 13

-vii-

DEFENDANT PRISMA LABS, INC.'S NOTICE OF MOTION AND MOTION TO
COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT          23-cv-00680-CRB

## SUMMARY OF ARGUMENT

Plaintiffs are users of a mobile application called Lensa developed by Defendant Prisma Labs, Inc. ("Prisma"). In their Complaint, Plaintiffs allege that Prisma violated the Illinois Biometric Information Privacy Act ("BIPA") by collecting and using their biometrics without their consent. Prisma denies these allegations and brings this motion to seek an order compelling Plaintiffs to arbitrate their claims.

Plaintiffs admit that they agreed to Lensa's Terms of Use. Compl. ¶¶ 3-7. And these same Terms of Use say three times—twice in all bold and once in all bold *and* all caps—that *all disputes* shall be resolved through arbitration. Nevertheless, Plaintiffs oddly filed this case in federal court. Hence, this motion.

The Ninth Circuit's recent ruling in *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505 (9th Cir. 2023), is instructive. In *Oberstein*, the district court granted the defendant's motion to compel arbitration based on an arbitration provision in its website's terms of use, and the Ninth Circuit affirmed. *Id.* at 515-16.  As in *Oberstein*, Plaintiffs here were presented with a screen that included hyperlinked Terms of Use that were either underlined or shown in a different color. *Id.* at 516.  Also similarly, the language manifesting agreement to the Terms of Use were conspicuously placed on Prisma's consent screen right next to the box Plaintiffs affirmatively checked or right below the "Next" button users had to click before using the App. *Id*. Indeed, Plaintiffs were not able to use the Lensa App without affirmatively agreeing to the Terms of Use. Thus, their doing so unambiguously manifested their acceptance of the Terms of Use and the arbitration agreement contained within and constitutes a binding contract. *Id.* at 515.

Oberstein is not an outlier, but rather reflects the Supreme Court and Ninth Circuit's repeated holdings that "any doubts about the scope of arbitrable issues… are to be resolved in favor of arbitration." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). Likewise, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91-92 (2000). Confronted with analogous circumstances, courts in the Ninth Circuit, including this Court, consistently enforce Terms of Use arbitration agreements. *E.g.*, *Blau v. AT&T Mobility*, 2012 WL 10546, at *4 (N.D. Cal. Jan. 3, 2012) (Breyer, J.) (enforcing Terms of Use arbitration agreement)*; Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020) (reversing and remanding with instructions to compel arbitration based on hyperlinked Terms of Use); *In re Juul Labs, Inc., Antitrust Litig.*,

-viii-

555 F. Supp. 3d 932, 944 & n.5 (N.D. Cal. 2021) (enforcing arbitration provision contained in Terms of Use provided as underlined hyperlinks).

Here, the plain language of the arbitration provision speaks for itself. The Terms of Use state: "*all disputes* arising out of or relating to these Terms or Lensa will be resolved through confidential binding arbitration." TOU § 15 (emphasis added). The Ninth Circuit has repeatedly held that such broad language should be applied literally. *See Bd. of Trustees of IBEW Loc. No. 640 v. Cigna Health & Life Ins. Co.*, 2022 WL 2805111, at *1 (9th Cir. July 18, 2022); (*Schoenduve Corp. v. Lucent Technologies, Inc.*, 442 F.3d 727, 732 (9th Cir. 2006); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999.

Accordingly, Prisma petitions the Court for an order compelling Plaintiffs to arbitrate their claims and staying all proceedings pending the conclusion of such arbitration.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This is a motion to compel Plaintiffs to abide by the binding arbitration provision they expressly agreed to when they began using the Lensa App ("Lensa" or "the App"), a popular mobile application developed by Defendant Prisma Labs, Inc. ("Prisma").[1]  Plaintiffs claim (incorrectly) that Prisma violated the Illinois Biometric Information Privacy Act ("BIPA") by collecting, storing, and using biometric information from the photographs that users uploaded to the Lensa App. Put simply, this is false. BIPA does not apply here for three separate and distinct reasons. First, the BIPA text states that "[b]iometric identifiers do not include … photographs," 740 Ill. Compiled Stat. 14/10, yet here Plaintiffs assert they uploaded *only* photographs. Second, BIPA only governs information "used to identify an individual," *id.* and Lensa is not alleged to have identified *anyone*. Third, Plaintiffs admit that they consented to the Lensa Privacy Policy, which means they affirmatively consented to the *exact* conduct they complain of here.

But this Court need not consider such defects with Plaintiffs' claims because Plaintiffs' case is barred by a binding arbitration agreement that was clearly spelled out in Lensa's Terms of Use ("TOU") and agreed to by Plaintiffs. Indeed, Plaintiffs could not even use the Lensa App without first agreeing to the TOU, which state three separate times*,* twice in all bold and once in all bold *and* all caps, that users are agreeing to "**BINDING ARBITRATION**." TOU § 15. The TOU provide further that "you and the Company waive your rights … to have any dispute arising out of or related to these Terms or Lensa resolved in court. Instead, all disputes arising out of or relating to these Terms or Lensa will be resolved through *confidential binding arbitration*…." TOU § 15.[2] Under controlling Supreme Court and Ninth Circuit

---

[1] This Motion satisfies Prisma's obligation to respond to the Complaint. *See Marchand v. Northrop Grumman Corp.*, 2017 WL 2633132, at *6 (N.D. Cal. June 19, 2017) (motion to compel arbitration tolls time to answer complaint). Prisma reserves its right to file a motion to dismiss for failure to state a claim or for judgment on the pleadings if the Court denies Prisma's Motion to Compel Arbitration. *See Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1475 (9th Cir. 1988) (Rule 12(b)(6) motion following motion to dismiss or stay the case in favor of a proceeding in state court "was not barred by Rule 12(g)"). In such a scenario, Prisma will seek dismissal of Plaintiffs' case on the grounds, among others, that the data at issue is not covered by BIPA as a matter of law and that Plaintiffs affirmatively consented to the very conduct they challenge now.

[2] Prisma's Exhibits are attached to the accompanying declaration of Benjamin M. Sadun. A copy of the TOU effective when Plaintiffs began using the App is Exhibit A thereto. A copy of Lensa's current Privacy Policy ("PP") is Exhibit B thereto. A copy of Lensa's December 2, 2022 Privacy Policy is Exhibit 7 to the

(Footnote Cont'd on Following Page)

DEFENDANT PRISMA LABS, INC.'S NOTICE OF MOTION AND MOTION TO
COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT          23-cv-00680-CRB

precedent, the Court is required to enforce this Agreement and compel Plaintiffs to arbitrate their claims. The TOU constitutes a binding agreement between the parties—indeed, Plaintiffs admit that they "agreed to the … Lensa terms of use" when they began using the App. Compl. ¶¶ 3-7. And Plaintiffs' claims fall squarely within the broad agreement to arbitrate "any dispute arising out of or related to these Terms or Lensa." *See infra* Argument Part I-II.

In addition, 9 U.S.C. § 3 requires the Court to stay this case pending arbitration. *See infra* Argument Part IV. For all of these reasons, as set forth more fully below, the Court should compel Plaintiffs to arbitrate their claims and stay this case pending arbitration.

## BACKGROUND

Prisma is a technology startup whose mission is to democratize access to photo and video editing software. Prisma's Lensa App gives users access to a variety of popular photo and video editing tools, enabling them to customize their photos in a wide range of ways, including retouching, blurring, the background, cropping, and resizing. Other tools in the App allow users to change hair color or transform their pictures into a variety of artistic styles. In addition to photo editing, Lensa also allows users to express themselves via "magic avatars" which are new computer-generated portraits of users, based on the photos that users choose to upload, in a variety of art styles, including, for example, as pop art icons or Japanese animation characters.

Prisma collects as little personal data from users as possible and is wholly transparent about what information it does collect and how it uses it. As explained in the Lensa Privacy Policy ("PP"), the App does not have any access to the user's photos unless and until the user gives Lensa *affirmative* permission to access his or her       camera or photos. *See* PP § 2. To further protect user privacy, most image processing happens directly *on the user's device* and the images are never shared with Prisma. *Id.* § 4. As disclosed in the PP, two kinds of processing ("art styles" and "magic avatars") are done on Prisma servers due to the amount of processing power required. *Id.* §§ 4-5. In those cases, all metadata is deleted upon upload, *id.*

---

Complaint. "For purposes of deciding a motion to compel arbitration, the Court may properly consider documents outside of the pleadings." *Xinhua Holdings Ltd. v. Elec. Recyclers Int'l, Inc.,* 2013 WL 6844270, at *5 (E.D. Cal. Dec. 26, 2013), *aff'd sub nom. Clean Tech Partners, LLC v. Elec. Recyclers Int'l, Inc.*, 627 F. App'x 621 (9th Cir. 2015). And in any event, Lensa's PP and TOU are incorporated into the pleadings because they are cited repeatedly in the Complaint, *e.g.*, Compl. ¶¶ 3-7, 32-46, and integral to it. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

§§ 2, 4, and the original photos are deleted from Prisma's servers after processing (within 24 hours). *Id.* § 4. Prisma does not use these photos to identify individuals, for marketing purposes, or to develop artificial intelligence products. *Id.* Preamble & § 4. And importantly, Prisma has never sold any user photos, avatars, or data and never will.

**I.      Plaintiffs and Prisma Agreed to Arbitrate Disputes on an Individual Basis.**

All five Plaintiffs allege that they downloaded the Lensa App between December 2, 2022 and December 14, 2022. Compl. ¶¶ 3-7. Each expressly admits that they "received disclosure of the then-current Lensa Privacy Policy, and ***agreed to the then-current Lensa Terms of Use***."[3] *Id.* Indeed, it is impossible to even open the App without receiving and agreeing to the TOU and PP. Portions of the welcome screens users saw when they first opened the app are shown below as Figures 1-3 and attached as Exhibits C-E.[4] The screen seen by Android users (Figure 1) contained only 23 words, 9 of which were a checkbox stating: "I agree to <u>Privacy Policy</u> and <u>Terms of Use</u>." The underlined words "Terms of Use" and "Privacy Policy" are hyperlinked to the full text of the respective documents. Sadun Decl. ¶¶ 4-6. It was impossible for Plaintiffs to create an account or use the App without clicking the box to demonstrate that they accepted the TOU and Privacy Policy. Unless and until they did so, the "Next" button would remain grayed out and inoperable. *Id.* iOS users saw a similar screen. *See* Figures 2 & 3; Ex. D & E.

---

[3] Except where otherwise noted, all emphasis in quotations is added.

[4] For purposes of deciding a motion to compel arbitration, the Court may properly consider documents outside of the pleadings." *Xinhua Holdings Ltd.*, 2013 WL 6844270, at *5. And in any event, the screenshots are from publicly available versions of the Lensa App and are therefore subject to judicial notice. The Court can and should consider such incontrovertible facts without converting the motion into a motion for summary judgment. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) (taking judicial website of publicly accessible website); *In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980, 1010 (N.D. Cal. 2020) (taking judicial notice of the defendant's webpage).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





**Figure 2** - iOS launch screen, December 2-3, 2022. *See* Ex. D.



**Figure 1** - Android launch screen, December 2-14, 2022. *See* Ex. C.

**Figure 3 -** iOS launch screen, December 4-14, 2022. *See* Ex. E.

The Terms of Use that Plaintiffs agreed to contain a binding Arbitration Agreement. The beginning of the TOU alerts users to this fact in an all-bold paragraph:

> **By Using Lensa, you agree to these Terms. If you do not agree to these Terms, including the mandatory arbitration provision and class action waiver in Section 15 (Dispute Resolution; Binding Arbitration), do not Use Lensa. Your continued Use of Lensa will confirm your acceptance of these Terms.**

The Arbitration Agreement itself takes up an entire page of the TOU, headed with a large-font, all bold, all caps title: "**DISPUTE RESOLUTION; BINDING ARBITRATION.**" TOU § 15. That section begins with another all-bold paragraph telling users: "**Please read the following Section carefully because it requires you to arbitrate certain disputes and claims with the Company and limits the manner in**

-4-

DEFENDANT PRISMA LABS, INC.'S NOTICE OF MOTION AND MOTION TO
COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT          23-cv-00680-CRB

**which you can seek relief from us**.” *Id.* The Arbitration Agreement provides: “***all disputes*** arising out of or relating to these Terms or Lensa will be resolved through confidential binding arbitration[.]*”*

## 15. DISPUTE RESOLUTION; BINDING ARBITRATION

**Please read the following Section carefully because it requires you to arbitrate certain disputes and claims with the Company and limits the manner in which you can seek relief from us.**

Except for small claims disputes in which you or the Company seek to bring an individual action in small claims court located in the county of your billing address or disputes in which you or the Company seeks injunctive or other equitable relief for the alleged unlawful use of intellectual property, you and the Company waive your rights to a jury trial and to have any dispute arising out of or related to these Terms or Prisma resolved in court. Instead, all disputes arising out of or relating to these Terms or Prisma will be resolved through confidential binding arbitration held in Santa Clara County, California in accordance with the Streamlined Arbitration Rules and Procedures ("**Rules**") of the Judicial Arbitration and Mediation Services ("**JAMS**"), which are available on the JAMS website and hereby incorporated by reference. You either acknowledge and agree that you have read and understand the rules of JAMS or waive your opportunity to read the rules of JAMS and any claim that the rules of JAMS are unfair or should not apply for any reason.

*Id.* Users can opt out of the Arbitration Agreement by mail or email within 30 days of accepting the TOU. Users who opt out of the arbitration provision can continue using the App while preserving their right to litigate disputes. Plaintiffs do not allege that any Plaintiff ever provided written notice to opt out of the Arbitration Agreement.

The TOU also includes an explicit class action waiver, which was given its own, all bold, all capitalized paragraph:

**ANY ARBITRATION UNDER THESE TERMS BY EITHER YOU OR US WILL ONLY BE ON AN INDIVIDUAL BASIS; CLASS ARBITRATIONS, CLASS ACTIONS, REPRESENTATIVE ACTIONS, AND CONSOLIDATION WITH OTHER ARBITRATIONS ARE NOT PERMITTED. YOU WAIVE ANY RIGHT TO HAVE YOUR CASE DECIDED BY A JURY AND YOU WAIVE ANY RIGHT TO PARTICIPATE IN A CLASS ACTION AGAINST US.**

## II.    Plaintiffs Filed This Putative Class Action in Federal Court Notwithstanding the Arbitration and Class Waiver Provisions.

Notwithstanding their acceptance of the TOU and Arbitration Agreement, and contrary to its clear and explicit terms, Plaintiffs filed this lawsuit against Prisma in federal court. Plaintiffs allege that when they used the Lensa App to edit photographs of themselves and/or create avatars based on those photos, Lensa “collect[ed] the facial geometry associated with the uploaded images” and used that data to “train its neural network algorithms” to improve the App’s performance and show users “better results.” Compl. ¶ 1. In particular, Plaintiffs allege (incorrectly) that biometric data is sent from users’ devices to Prisma “in an

identifiable way," which Prisma uses to create images it sends back to the user. *Id.* ¶¶ 39-41. Plaintiffs assert claims primarily under the Illinois Biometric Information Privacy Act, 740 ILCS 14/15 ("BIPA"), as well as a claim for unjust enrichment. *Id.* ¶¶ 60-106. In further violation of their agreement with Prisma, Plaintiffs seek to represent a class of "[a]ll persons who reside in Illinois whose biometric data was collected, captured, purchased, received through trade, or otherwise obtained by Prisma," despite the TOU's explicit class waiver provision. Compl. ¶ 49. Importantly, the Complaint admits that Plaintiffs agreed to the TOU and does not allege that the TOU is in any way unenforceable.

**III.    Plaintiffs' Claims Are Frivolous and Do Not Survive as a Matter of Law.**

The Court's review on a motion to compel arbitration "is strictly limited to determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the arbitrator." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (cleaned up). By way of background, however, Prisma notes that Plaintiffs' claims are frivolous and would not survive as a matter of law, regardless of the forum. Though this Court need not consider the issue due to the compulsory arbitration clause, Plaintiffs' claims lack merit for at least two major reasons.

First, Plaintiffs affirmatively consented to the December 2, 2022, Privacy Policy when they began using the App. Compl. ¶¶ 3-7, 35. As the Complaint recognizes, users affirmatively consented to allowing Lensa to access their photographs. *See id.* ¶ 22; *id.* Ex. 7 § 2. Indeed, photo editing is the whole purpose of the Lensa App. The Privacy Policy disclosed—under a large, bold, all caps heading "**HOW WE PROCESS YOUR PHOTOS AND VIDEOS**"—that the App would "process[] your photos" and use "information about … human faces' position, orientation and their topology." *Id.* § 4. The next two paragraphs make clear that "[w]e collect and store your Face Data for online processing function[s]." *Id.* "Face Data" explicitly includes "information related to human faces obtained from your images … using TrueDepth API technologies." *Id.* Thus, the App clearly disclosed that users' photos would be scanned on users' devices and the information gleaned from that processing would be sent to Lensa in order to provide the images requested by the user. There is simply no plausible reading of the very Privacy Policy Plaintiffs rely upon that would support their core theory that "Prisma deliberately fails to disclose that it is collecting its users' biometric data." Compl. ¶ 39.

Second, by its own terms, the data at issue is not covered by BIPA. It is true that BIPA defines "face

-6-

geometry" as a biometric identifier. 740 ILCS 14/10. But the very next sentence explicitly *excludes* photographs. *Id.* ("Biometric identifiers do not include … photographs…."). The definition of "biometric information" further excludes "information ***derived from items or procedures excluded under the definition of biometric identifiers.***" *Id.* Thus, as a matter of law, face geometry derived from photographs does not constitute biometric information under BIPA. Here, however, that is precisely what Plaintiffs allege Prisma collected. Although the Complaint is deliberately vague about how Plaintiffs believe the App operates, it does make clear that the information at issue is "biometric information extracted from photos." Compl. ¶ 43.

## LEGAL STANDARD

The FAA provides that an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The U.S. Supreme Court has emphasized that the FAA reflects a strong "federal policy favoring arbitration." *E.g., Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). It has also held that any ambiguities relating to the scope of such an agreement must be resolved in favor of arbitration. *See Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989).

Where a party to an arbitration agreement fails or refuses to arbitrate, the counterparty may petition a United States District Court "for an order directing that … arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. On a motion to compel arbitration, the FAA "leaves no place for the exercise of discretion by a district court." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (cleaned up). Rather, "[t]he court's role … [is] limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Id.* "If the response is affirmative on both counts, then the Act ***requires*** the court to enforce the arbitration agreement in accordance with its terms." *Id.*[5] The Court "may not review the merits of the dispute." *Gellman v. Hunsinger*, 2019 WL 13198244, at *2 (S.D. Cal. Feb. 20, 2019) (citing *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008)).

---

[5] Likewise, under California law, the Court generally must compel arbitration "if it determines that an agreement to arbitrate the controversy exists." Cal. Code Civ. Proc. § 1281.2.

-7-

**ARGUMENT**

**I.    The FAA Applies to the Parties' Arbitration Agreement.**

The Supreme Court and Ninth Circuit have repeatedly observed that the FAA is "a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "The overarching purpose of the FAA ... is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). This "liberal federal policy favoring arbitration agreements" applies "notwithstanding any state substantive or procedural policies to the contrary." *Id.* at 346 (cleaned up). Accordingly, "any doubts about the scope of arbitrable issues, including applicable contract defenses, are to be resolved in favor of arbitration." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016) (quoting *Moses H. Cone*, 460 U.S. at 24-25). Likewise, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000).

The FAA governs any arbitration agreement that is "written" and in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. Here, both criteria are met: (i) the arbitration agreement is in writing; and (ii) contracts related to the use of an online platform plainly involve interstate commerce, because "the Internet is an instrumentality and channel of interstate commerce." *United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007); *see also Williams v. Eaze Sols., Inc.*, 417 F. Supp. 3d 1233, 1238 (N.D. Cal. 2019) (applying FAA to an app and granting motion to compel arbitration); *Webb v. DoorDash, Inc.*, 451 F. Supp. 3d 1360, 1366 (N.D. Ga. 2020) (same). Here, Plaintiffs allege no grounds that would make the contract void or unenforceable. To the contrary, the facts combined with controlling Ninth Circuit precedent (*see infra* Part II) make clear that the TOU is a binding and enforceable agreement. Thus, the Parties' Arbitration Agreement is "valid, irrevocable, and enforceable." 9 U.S.C. § 2.  The burden resides with Plaintiffs to prove otherwise, which is an impossible hurdle to overcome here given the clear terms of the TOU and the strong presumption towards enforcing arbitration recognized by the Supreme Court and Ninth Circuit.

**II.    The FAA Requires Plaintiffs to Arbitrate Their Claims against Prisma.**

Under the FAA, a court must compel arbitration if: (1) an agreement to arbitrate exists; and

-8-

(2) the agreement encompasses the parties' dispute. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Here, both elements are satisfied: the Parties' Arbitration Agreement is valid, enforceable, and it expressly covers Plaintiffs' claims.

**A.      Plaintiffs Agreed to Arbitrate Claims against Prisma.**

To determine whether a valid arbitration agreement has been formed, a court must "apply ordinary state-law principles that govern the formation of contracts" where they do not conflict with the FAA or other federal laws. *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).[6] California law applies to this case. The TOU provides:

> ## 16. GOVERNING LAW AND VENUE
>
> These Terms and your Use of Lensa will be governed by, construed and enforced in accordance with the laws of California, without regard to conflict of law rules or principles (whether of California or any other jurisdiction) that would cause the application of the laws of any other jurisdiction.

TOU § 16. Choice-of-law provisions in consumer contracts, including in arbitration agreements, are enforceable. *E.g.*, *Ulbrich v. Overstock.com, Inc.*, 887 F. Supp. 2d 924, 930 (N.D. Cal. 2012) (enforcing choice of California law).

Under California law, Plaintiffs' acceptance of the Lensa TOU constitutes a binding agreement. *See Blau v. AT&T Mobility*, 2012 WL 10546, at *4 (N.D. Cal. Jan. 3, 2012) (Breyer, J.); *accord, e.g.*, *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 518 (9th Cir. 2023) (affirming order compelling arbitration contained in website's terms of use); *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020) (reversing denial of motion to compel arbitration based on website's hyperlinked terms of use); *DeVries v. Experian Info. Sols., Inc.*, 2017 WL 733096, at *5-7 (N.D. Cal. Feb. 24, 2017) (enforcing arbitration clause where notice above online order button informed customers that, by submitting an order, they agreed to hyperlinked terms of use); *Crawford v. Beachbody, LLC*, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) (enforcing

---

[6] This principle extends only to "generally applicable" contract law; state-law rules that "discriminat[e]" against or "disfavor[]" arbitration agreements are preempted by the FAA. *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426 (2017).

-9-

DEFENDANT PRISMA LABS, INC.'S NOTICE OF MOTION AND MOTION TO
COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT                23-cv-00680-CRB

terms where there was a hyperlinked notice in contrasting color immediately above "Place Order" button); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011) (enforcing arbitration clause where plaintiff clicked an "Accept" button that was placed above a hyperlinked statement, which indicated that clicking the button constituted assent to the terms of service); *Rodriguez v. Experian Servs. Corp.*, 2015 WL 12656919, at *2-3 (C.D. Cal. Oct. 5, 2015) (enforcing arbitration clause where website stated "By clicking the button above … you agree to our Terms of Use" and terms of use were hyperlinked at the bottom of the webpage).

It does not matter whether the Plaintiffs "read the agreements before signing them," *Blau*, 2012 WL 10546, at *4, (though these Plaintiffs represented to Prisma that they had), so long as "a reasonably prudent user would be on inquiry notice of the terms." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74-75 (2d Cir. 2017) (applying California law); *see also Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 395 (9th Cir. 2020) (holding that under California law, a plaintiff "cannot avoid the terms of [the] contract on the ground that he ... failed to read it before signing"). Thus, under Ninth Circuit precedent, even so-called "clickwrap" agreements are binding where: "(1) the [defendant] provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Oberstein*, 60 F.4th at 515.

Here, both elements are indisputably satisfied because Plaintiffs affirmatively clicked a checkbox next to the words "I agree to <u>Privacy Policy</u> and <u>Terms of Use</u>" or clicked a "Next" button that had similar language right below it and that contained obvious hyperlinks to the relevant documents. *See supra* at 3-4. The Ninth Circuit's holding in *Oberstein* is directly on point. There, the plaintiffs brought a putative class action against an event ticketing website. 60 F.4th at 509. The district court granted the defendant's motion to compel arbitration based on an arbitration provision in the website's terms of use, and the Ninth Circuit affirmed. *Id.* When creating an account or ordering tickets, users of the website were "presented with a confirmation button above which text inform[ed] the user that, by clicking on this button, 'you agree to our Terms of Use.'" *Id.* at 515. The "'Terms of Use' hyperlink" was written in a different color, "distinguishing it from the surrounding text." *Id.* at 516. Upon clicking the hyperlink, "users [were] transferred to a separate webpage containing the Terms, which contain[ed] an arbitration provision." *Id.* On these facts, the Ninth Circuit agreed that as a matter of law "a reasonable user would have seen the notice and been able to locate

-10-

the Terms via hyperlink" and that the words "you agree to our Terms of Use … clearly denote[] that continued use will act as a manifestation of the user's intent to be bound." *Id.* at 515-16.

Indeed, Plaintiffs admit that they agreed to Lensa's TOU. Compl. ¶¶ 3-7. Nor could they argue otherwise, because there is no daylight between this case and *Oberstein*. As in *Oberstein*, Plaintiffs were presented with a screen that included hyperlinked, Terms of Use that were either underlined or shown in a different color. This language was conspicuously placed right next to the box Plaintiffs affirmatively checked or right below the "Next" button users had to click before using the App. These hyperlinks provided clear notice that Plaintiffs were agreeing to the App's Terms of Use and made it easy to find them. *See also Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020) (reversing and remanding with instructions to compel arbitration based on hyperlinked Terms of Use); *In re Juul Labs, Inc., Antitrust Litig.*, 555 F. Supp. 3d 932, 944 & n.5 (N.D. Cal. 2021) (enforcing arbitration provision contained in Terms of Use provided as underlined hyperlinks). And, as in *Oberstein*, Plaintiffs were not able to use the Lensa App without affirmatively agreeing to the Terms of Use. Thus, their doing so unambiguously manifested acceptance of the TOU and agreement to be bound by them. Moreover, the *Oberstein* court noted that cases where users "must check a box explicitly stating 'I agree' in order to proceed" are the "most straightforward" kinds of enforceable user agreements. 60 F.4th at 513.[7] For these reasons, there can be no serious dispute that the TOU constitute a binding agreement between Prisma and Plaintiffs.

## B.   Plaintiffs' Claims Fall Squarely within the Arbitration Agreement.

The Supreme Court has "repeatedly held that ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1418 (2019). Thus, "where the contract contains an arbitration clause, there is a presumption of arbitrability" and "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S.

---

[7] Agreements where users need to affirmatively click a designated "I agree" button are called "clickwrap" agreements. A "modified" or "hybrid" clickwrap agreement presents terms of use as part of some other transaction so that clicking a button both completes a transaction *and* denotes acceptance of the terms of use. *See Crawford v. Beachbody, LLC*, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) (citation omitted). Both constitute binding contracts. *See id.*

643, 650 (1986). "This duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights." *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987).

Here, the Parties' Arbitration Agreement is quite broad and applies to "any dispute arising out of or related to [the TOU] *or Lensa.*" TOU § 15 (emphasis added). The Ninth Circuit expressly has held that such language "reach[es] all aspects of [the Parties'] relationship." *Schoenduve Corp. v. Lucent Technologies, Inc.*, 442 F.3d 727, 732 (9th Cir. 2006); *see also Bd. of Trustees of IBEW Loc. No. 640 v. Cigna Health & Life Ins. Co.*, 2022 WL 2805111, at *1 (9th Cir. July 18, 2022) ("[T]he use of both 'arising out of' and 'relating to' indicates that the parties intended to include a broad arbitration provision." (cleaned up)). When such language is used, Plaintiffs' allegations "need only 'touch matters' covered by the contract" in order to "require arbitration." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). Thus, in *Simula*, the Ninth Circuit held that "an arbitration clause containing the phrase 'arising in connection with this Agreement'" in a licensing agreement extended to all of the licensor's claims against the licensee, including antitrust, Lanham Act, defamation, and misappropriation of trade secrets claims. *Id.* at 721-25.

Similarly, in *Digital Software Servs., Inc. v. Entm't Programs, Inc.*, 2010 WL 727610 (E.D. Cal. Mar. 1, 2010), the defendant had a distribution agreement to distribute videos copyrighted by the plaintiff. *Id.* at *1. The agreement specified that "[a]ny and all disputes arising in connection with this agreement shall be resolved by binding arbitration." *Id.* After the agreement was terminated, the defendant continued distributing the videos and joined a conspiracy to sell counterfeit copies. The copyright holder sued alleging copyright infringement, trademark infringement, counterfeiting, and RICO claims. *Id.* The court ordered the plaintiff to arbitrate all of its claims, holding that "when parties include a broad arbitration provision, every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract should be sent to arbitration." *Id.* at *3.

Plaintiffs agreed to arbitrate "any dispute arising out of or related to [the TOU] or Lensa." TOU § 15. Their allegations that the Lensa App improperly collected biometric data, *see* Compl. ¶¶ 39-41, plainly relate to Lensa. Moreover, as in *Schoenduve*, this broad language "reach[es] all aspects of [the Parties'] relationship," 442 F.3d at 732, including Prisma's alleged use of Plaintiffs' data. In addition, Plaintiffs'

claims rely heavily on their theories about what the Lensa Privacy Policy did or did not disclose. Compl. ¶¶ 32-47. The PP is an integral part of the Lensa TOU. *See* TOU §§ 1, 4, 8, 18. Thus, as in *Digital Software*, Plaintiffs' claims have a "significant relationship to the contract," 2010 WL 727610, at *3, and, as in *Simula*, far more than "'touch matters' covered by the contract." 175 F.3d at 721.[8]

### III. The Arbitration Must Proceed on an Individual Basis.

Although Plaintiffs filed this case as a putative class action, they had already agreed under the Terms of Use not to participate in a class action whether in court or in arbitration. Section 15 of the Lensa TOU states, in an all capitalized, bold paragraph:

> **ANY ARBITRATION UNDER THESE TERMS BY EITHER YOU OR US WILL ONLY BE ON AN INDIVIDUAL BASIS; CLASS ARBITRATIONS, CLASS ACTIONS, REPRESENTATIVE ACTIONS, AND CONSOLIDATION WITH OTHER ARBITRATIONS ARE NOT PERMITTED. YOU WAIVE ANY RIGHT TO HAVE YOUR CASE DECIDED BY A JURY AND YOU WAIVE ANY RIGHT TO PARTICIPATE IN A CLASS ACTION AGAINST US.**

Under the FAA, courts must apply arbitration agreements "in accordance with the terms thereof." 9 U.S.C. § 4. This includes enforcing class waiver provisions. *Concepcion*, 563 U.S. at 344 ("Requiring the availability of classwide arbitration" where the parties do not provide for it would be "inconsistent with the FAA" and "interfere[]" with the FAA's "principal purpose … to "ensure that private arbitration agreements are enforced according to their terms" (cleaned up)); *see also Eshagh v. Terminix*

---

[8] In the unlikely event that the Court has any doubt as to the merit of this motion, it should defer the question of arbitrability to the arbitrator in accordance with the express agreement of the parties. Parties to an arbitration agreement can "agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). Here, the Arbitration Agreement does so because it incorporates the JAMS Streamlined Arbitration Rules & Procedures. TOU § 15. Rule 8(b) of those Rules provides that: "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought … shall be submitted to and ruled on by the Arbitrator." *See* "JAMS Streamlined Arbitration Rules & Procedures," JAMS, available at https://www.jamsadr.com/rules-streamlined-arbitration (last visited June 21, 2023). The incorporation of such rules "constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *see also, e.g.*, *Luckert v. Tesla Energy Operations, Inc.*, 2021 WL 3721967, at *1 (N.D. Cal. Aug. 5, 2021) (holding that an agreement that "incorporates the JAMS Streamlined Arbitration Rules into its arbitration provision" "'clearly and unmistakably' delegate[s] the question of arbitrability to the arbitrator under *Brennan*").

-13-

*Int'l Co., L.P.*, 588 F. App'x 703, 703 (9th Cir. 2014) (affirming "district court's order striking class allegations from [the plaintiff's] complaint and compelling arbitration of his claims").

Indeed, even without such an express waiver of collective actions, by default arbitration provisions are assumed to ***forbid class*** arbitration unless they explicitly permit it. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685-87 (2010). In *Stolt-Nielsen*, and again in *Concepcion*, the Supreme Court explained that this is because "[a]rbitration is poorly suited to the higher stakes of class litigation" for a variety of reasons. *Concepcion*, 563 U.S. at 350. "In bilateral arbitration, parties forgo … procedural rigor and appellate review" in exchange for "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators." *Id.* at 348. Class arbitration is antithetical to these aims because it is significantly more formalized and complicated due to the need to protect absent party rights; manage much broader discovery; and resolve issues of numerosity, commonality, certifiability, adequacy, and typicality. *Id.* Class arbitration also "greatly increases risks" of prejudicing the rights of defendants and extorting "in terrorem" settlements. *Id.* at 350. Where, as here, the TOU expressly and unambiguously ***prohibit*** class litigation and class arbitration, Plaintiffs' attempt to assert their claims on a classwide basis is even more inappropriate, and the Court should bar them from doing so. *See Eshagh*, 588 F. App'x at 703.

Plaintiffs may argue that requiring them to proceed individually would be unfair because individual litigation may not be worth the time or expense involved. The Supreme Court has explicitly held that such considerations are irrelevant on a motion to enforce a class-action waiver. *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013) ("[T]he fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to pursue* that remedy."). But in any event, this is not a case where precluding a class action would functionally preempt small but meritorious claims. BIPA allows plaintiffs to recover the greater of actual damages or liquidated damages of $1000 per violation (and $5,000 for intentional or reckless violations). 740 Ill. Comp. Stat. 14/20. These damages can be substantial. *See e.g.*, *Cothron v. White Castle Sys., Inc.*, -- N.E.3d --, 2023 IL 128004, ¶ 1. Thus, to the extent Plaintiffs or other Illinois users have meritorious BIPA claims against Prisma (which they do not), they remain both legally and functionally free to pursue those claims in arbitration.

-14-

DEFENDANT PRISMA LABS, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

23-cv-00680-CRB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV.      This Court Should Stay the Case Pending Arbitration.**

Once a court determines that a claim is subject to a binding arbitration provision, the FAA *requires* that this case be stayed "until such arbitration has been had in accordance with the terms of" the Arbitration Agreement. 9 U.S.C. § 3. The Ninth Circuit has described such a stay as "mandatory." *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 984 (9th Cir. 2017). California law contains a similar requirement. *See* Cal. Code Civ. Proc. § 1281.4. Thus, based on this motion, if the Court determines that Plaintiffs are required to arbitrate their claims (which they are), the Court should stay the action pending the resolution of such arbitration.

**CONCLUSION**

For the foregoing reasons, the Court should issue an order compelling Plaintiffs to arbitrate their claims against Prisma on an individual basis only, in accordance with the Parties' arbitration agreement. The Court should also stay all proceedings pending the conclusion of such arbitration.

DEFENDANT PRISMA LABS, INC.'S NOTICE OF MOTION AND MOTION TO
COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT                    23-cv-00680-CRB

Dated:  June 21, 2023

Respectfully Submitted,

By: */s/ Brenda R. Sharton*

Brenda R. Sharton (admitted *Pro Hac Vice*)
DECHERT LLP
One International Place,
100 Oliver Street, 40th Floor
Boston, MA 2110-2605
Telephone: (617) 728-7113
Facsimile: (617) 275-8374
Email: brenda.sharton@dechert.com

Benjamin M. Sadun (SBN 287533)
DECHERT LLP
633 W. 5th Street, Suite 4900
Los Angeles, CA 90071
Telephone: (213) 808-5700
Facsimile: (213) 808-5760
Email:  benjamin.sadun@dechert.com

Theodore E. Yale (*Pro Hac Vice* forthcoming)
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-4000
Facsimile: (215) 655-2455
Email: theodore.yale@dechert.com

*Attorneys for Defendant Prisma Labs, Inc.*