Brenda R. Sharton (admitted *Pro Hac Vice*)
DECHERT LLP
One International Place, 40th Floor
100 Oliver Street
Boston, MA 02110-2605
Telephone: (617) 728-7100
Facsimile: (617) 275-8374
brenda.sharton@dechert.com

Benjamin M. Sadun (Bar No. 287533)
DECHERT LLP
US Bank Tower
633 West 5th Street, Suite 4900
Los Angeles, CA 90071-2032
Telephone: (213) 808-5700
Facsimile: (213) 808-5760
benjamin.sadun@dechert.com

Theodore E. Yale (*Pro Hac Vice* forthcoming)
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-4000
Facsimile: (215) 655-2455
theoore.yale@dechert.com

*Attorneys for Defendant Prisma Labs, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| JACK FLORA, ERIC MATSON, NATHAN STONER, COURTNEY OWENS, and D.J., A MINOR CHILD, individually and on behalf of similarly situated individuals,<br><br>              Plaintiffs,<br><br>  v.<br><br>PRISMA LABS, INC.,<br><br>              Defendant. | Case No.: 3:23-cv-00680-CRB<br><br>**DEFENDANT PRISMA LABS, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>COMPLAINT FILED: February 15, 2023<br><br>Date:        August 18, 2023<br>Time:       10:00 A.M.<br>Dept.:       Courtroom 6 – 17th Floor<br>Judge:     Honorable Charles R. Breyer |

SUMMARY OF ARGUMENT ......................................................................................... VI

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................... 1

Introduction ................................................................................................................... 1

I.     The Arbitration Agreement Is Not Unconscionable. ............................................... 1

       A.     The Arbitration Agreement Is Procedurally Valid. ...................................... 2

       B.     The Arbitration Agreement Is Substantively Fair. ....................................... 2

              1.     The Forum Selection Clause Is Valid. ............................................... 3

              2.     The TOU's Cost-Sharing Provision Is Not Unconscionable. ............. 5

              3.     The JAMS Rules Provide for Adequate Discovery. ........................... 6

       C.     The Parties Delegated Questions of the TOU's Validity to the Arbitrator. .......... 8

       D.     In the Alternative, Any Unconscionable Provision Can Be Severed. ........... 9

II.    The JAMS Rules and Standards Do Not Make the Arbitration Agreement Illusory. ...... 10

       A.     Hypothetical Questions of How JAMS Would Resolve Supposed Conflicts Should
              be Decided by the Arbitrator ..................................................................... 11

       B.     JAMS Would Not Deny Jurisdiction based on the TOU's Forum Selection Clause. ........ 12

       C.     The TOU Complies with the JAMS guidelines Regarding Costs and Fees. ...... 13

Conclusion ................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 1250 Oceanside Partners*,
    652 F. App'x 588 (9th Cir. 2016) ........................................................................................ 12

*Aanderud v. Superior Ct.*,
    221 Cal. Rptr. 3d 225 (Ct. App. 2017) .......................................................................... 11, 15

*Air California v. U.S. Dep't of Transp.*,
    654 F.2d 616 (9th Cir. 1981) ............................................................................................ 11

*Am. Exp. Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013) ............................................................................................................ 5

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
    6 P.3d 669 (Cal. 2000) ..................................................................................................... 6, 7

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ......................................................................................................... 5, 8

*AT&T Techs., Inc. v. Comm's Workers of Am.*,
    475 U.S. 643 (1986) ......................................................................................................... 1, 6

*Avanesians v. Coll. Network, Inc.*,
    2016 WL 3570424 (Ct. App. June 23, 2016) ..................................................................... 4

*Bennett v. Peters*,
    2004 WL 1398542 (Ct. App. June 23, 2004) ..................................................................... 7

*Big Daddy Games, LLC v. Reel Spin Studios, LLC*,
    2012 WL 2395186 (E.D. Wis. June 25, 2012) ................................................................... 4

*Blau v. AT&T Mobility*,
    2012 WL 10546 (N.D. Cal. Jan. 3, 2012) ...................................................................... 2, 6

*Bolter v. Superior Court*,
    104 Cal. Rptr. 2d 888 (Ct. App. 2001) ................................................................... 4, 5, 10

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015) ........................................................................................... 9

*Callahan v. Paychex N. Am. Inc.*,
    2022 WL 11902205 (N.D. Cal. Oct. 20, 2022) ............................................................... 1, 2

*Cir. City Stores, Inc. v. Ahmed*,
    283 F.3d 1198 (9th Cir. 2002) ........................................................................................... 2

*Comb v. PayPal, Inc.*,
    218 F. Supp. 2d 1165 (N.D. Cal. 2002) ............................................................................... 5

*CQL Original Prod., Inc. v. N.H.L Players' Assn.*,
    46 Cal. Rptr. 2d 412 (Ct. App. 1995) .......................................................................... 3, 15

*Ehlers Elevators, Inc. v. Beta Seed Co.*,
    2002 WL 31492719 (Ct. App. Nov. 8, 2002) ...................................................................... 9

*Fitzgerald v. Grand Circle, LLC*,
    2020 WL 6152027 (E.D. Pa. Oct. 20, 2020) ......................................................... 9, 13, 14

*Ford v. Hyundai Motor Am.*,
    2021 WL 7448507 (C.D. Cal. Oct. 5, 2021) ..................................................................... 15

*Fridman v. Uber Techs., Inc.*,
    2019 WL 1385887 (N.D. Cal. Mar. 27, 2019) ................................................................. 15

*Gateway Structures, Inc. v. Bd. of United Bhd.*,
    779 F.2d 485 (9th Cir. 1985) .......................................................................................... 11

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ............................................................................................................ 8

*Giuliano v. Inland Empire Pers., Inc.*,
    58 Cal. Rptr. 3d 5 (Ct. App. 2007) ................................................................................... 7

*Green Tree Fin. Corp.-Ala. v. Randolph*,
    531 U.S. 79 (2000) ............................................................................................................ 6

*Hendricks v. AT & T Mobility, LLC*,
    823 F. Supp. 2d 1015 (N.D. Cal. 2011) ........................................................................ 3, 5

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) ........................................................................................................ 8

*Inter@ctivate, Inc. v. Cubic Transp. Sys., Inc.*,
    2007 WL 178429 (Ct. App. Jan. 25, 2007) ..................................................................... 14

*Lang v. Skytap, Inc.*,
    347 F. Supp. 3d 420 (N.D. Cal. 2018) ............................................................................ 14

*Lee v. Chase Manhattan Bank*,
    2008 WL 698482 (N.D. Cal. Mar. 14, 2008) ............................................................ 11, 12

*Little v. Auto Stiegler, Inc.*,
    63 P.3d 979 (Cal. 2003) ................................................................................................... 10

*Luckert v. Tesla Energy Operations, Inc.*,
    2021 WL 3721967 (N.D. Cal. Aug. 5, 2021) .................................................................... 9

*Macias v. Excel Bldg. Servs. LLC*,
    767 F. Supp. 2d 1002 (N.D. Cal. 2011) ................................................................ 10

*Marchand v. Northrop Grumman Corp.*,
    2017 WL 2633132 (N.D. Cal. June 19, 2017) ..................................................... 3, 7

*McLellan v. Fitbit, Inc.*,
    2017 WL 4551484 (N.D. Cal. Oct. 11, 2017) ......................................................... 2

*McMullen v. Meijer, Inc.*,
    166 F. App'x 164 (6th Cir. 2006) ......................................................................... 10

*Mills v. Facility Sols. Grp., Inc.*,
    300 Cal. Rptr. 3d 833 (Ct. App. 2022) ............................................................... 6, 7

*Mohamed v. Uber Techs., Inc.*,
    848 F.3d 1201 (9th Cir. 2016) ............................................................................... 2

*Mortensen v. Bresnan Communications, LLC*,
    722 F.3d 1151 (9th Cir. 2013) ............................................................................... 1

*Nagrampa v. MailCoups, Inc.*,
    469 F.3d 1257, 1287 (9th Cir. 2006) ............................................................. 3, 4, 5

*Parker v. McCaw*,
    24 Cal. Rptr. 3d 55 (Ct. App. 2005) ...................................................................... 7

*Peoples v. Children's Hosp. of Cent. Cal.*,
    2020 WL 469338 (E.D. Cal. Jan. 29, 2020) .......................................................... 7

*Pope v. Sonatype, Inc.*,
    2015 WL 2174033 (N.D. Cal. May 8, 2015) ............................................... 9, 13, 14

*Poublon v. C.H. Robinson Co.*,
    846 F.3d 1251 (9th Cir. 2017) ............................................................................ 7, 8

*Pratt v. Silversea Cruises, Ltd., Inc.*,
    2005 WL 1656891 (N.D. Cal. July 13, 2005) ....................................................... 4

*Reddam v. KPMG LLP*,
    457 F.3d 1054 (9th Cir. 2006) ........................................................................ 12, 14

*Rent-A-Ctr., W., Inc. v. Jackson*,
    561 U.S. 63 (2010) ................................................................................................ 8

*Sanchez v. Gruma Corp.*,
    2019 WL 1545186 (N.D. Cal. Apr. 9, 2019) ......................................................... 7

*SeeComm Network Servs. Corp. v. Colt Telecomms.*,
    2004 WL 1960174 (N.D. Cal. Sept. 3, 2004) ........................................................ 3

*Serafin v. Balco Properties Ltd., LLC*,
    185 Cal. Rptr. 3d 151 (Ct. App. 2015) ............................................................. 9

*Smith, Valentino & Smith, Inc. v. Superior Ct.*,
    551 P.2d 1206 (Cal. 1976) ................................................................................ 3

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) .......................................................................................... 8

*Tompkins v. 23andMe, Inc.*,
    840 F.3d 1016 (9th Cir. 2016) .......................................................................... 6

*TradeHill, Inc. v. Dwolla, Inc.*,
    2012 WL 1622668 (N.D. Cal. May 9, 2012) ..................................................... 6

*Trudeau v. Google LLC*,
    349 F. Supp. 3d 869 (N.D. Cal. 2018) .............................................................. 2

*Tura v. Med. Shoppe Int'l, Inc.*,
    2010 WL 11506428 (C.D. Cal. Mar. 3, 2010) .................................................. 4

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
    489 U.S. 468 (1989) .......................................................................................... 6

*Wilmot v. McNabb*,
    269 F. Supp. 2d 1203 (N.D. Cal. 2003) .......................................................... 10

*Wiseley v. Amazon.com, Inc.*,
    709 F. App'x 862 (9th Cir. 2017) ..................................................................... 2

*Wynn Resorts, Ltd. v. Atl.-Pac. Cap., Inc.*,
    497 F. App'x 740 (9th Cir. 2012) ................................................................... 14

*Yei A. Sun v. Advanced China Healthcare, Inc.*,
    901 F.3d 1081 (9th Cir. 2018) .......................................................................... 3

*Zaitzeff v. Peregrine Fin. Grp., Inc.*,
    2008 WL 11408422 (C.D. Cal. June 23, 2008) ................................................ 4

**Statutes & Constitutions**

9 U.S.C. § 5 ............................................................................................................. 14

740 Ill. Comp. Stat. 14/20 ..................................................................................... 5, 6

Cal. Civ. Code § 1599 ................................................................................................ 9

Cal. Civ. Proc. Code § 1281.6 ................................................................................. 14

California Fair Housing and Employment Act ("FEHA") ........................................ 7

-iv-

U.S. Constitution, Article III ................................................................................ 11, 12

**Other Authorities**

JAMS Employment Arbitration Rules .......................................................................... 7

JAMS Streamlined Arbitration Rules & Procedures ........................................... *passim*

JAMS Consumer Arbitration Minimum Standards ............................................... *passim*

DEFENDANT PRISMA LABS, INC.'S REPLY ISO MOTION TO COMPEL ARBITRATION       23-cv-00680-CRB

### SUMMARY OF ARGUMENT

In its Motion to Compel Arbitration, Prisma Labs Inc. ("Prisma") cites dozens of Supreme Court and Ninth Circuit cases holding that terms of use similar to Prisma's constitute binding contracts, and that arbitration agreements contained in such terms of use are valid and must be enforced. ECF No. 21 ("Mot."). Plaintiffs' Opposition Brief (ECF No. 25 ("Opp.")) does not address those cases or refute Prisma's arguments. Instead, Plaintiffs argue only that two terms in the Parties' Arbitration Agreement are unconscionable or illusory. Plaintiffs' arguments lack merit for several reasons, as set forth below.

First, the Arbitration Agreement is not unconscionable. The Agreement is not procedurally unconscionable because it contains an opt-out provision, *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016), and because it was bolded and prominently displayed in the TOU. *Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 864 (9th Cir. 2017). Nor is the Agreement substantively unconscionable. For example, Plaintiffs complain that the JAMS Rules provide for different discovery than the Federal Rules. But the cases Plaintiffs rely on are unique to statutory employment claims. And even in the employment context, the Ninth Circuit has already rejected Plaintiffs' argument that "limitations on discovery are substantively unconscionable" when they "allow less discovery than the federal rules" because "arbitration is meant to be a streamlined procedure." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1270 (9th Cir. 2017); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011). As numerous other courts have recognized, the JAMS Rules afford adequate discovery under any standard.

Second, Plaintiffs argue that the Agreement is illusory because it and/or JAMS's own Streamlined Arbitration Rules & Procedures ("JAMS Rules") themselves, supposedly conflict with the JAMS Consumer Arbitration Minimum Standards ("JAMS Standards").[1] But in the first instance, the hypothetical question of how JAMS would resolve these purported conflicts should be deferred to the arbitrator under the terms of the Parties' Agreement. *See Aanderud v. Superior Ct.*, 221 Cal. Rptr. 3d 225, 239 (Ct. App. 2017). And whether decided by the Court or the arbitrator, no such conflict exists. Plaintiffs' arguments are based on incorrect and implausible readings of the TOU and JAMS Rules.

Third, even if the Court were to reach these issues (which it should not) and find that part of the

---

[1] The JAMS Standards are available at https://www.jamsadr.com/rules-streamlined-arbitration. The JAMS Rules are available at https://www.jamsadr.com/rules-streamlined-arbitration/.

Arbitration Agreement is unenforceable or illusory (which it is not), the Court should sever or limit those provisions and compel arbitration under the default JAMS Rules. *See, e.g.*, Cal. Civ. Code § 1599; *Pope v. Sonatype, Inc.*, 2015 WL 2174033, at *7 (N.D. Cal. May 8, 2015).

Notably, most of Plaintiffs' arguments are not specific to the Lensa TOU. Rather, Plaintiffs implicitly argue that *any* arbitration before JAMS—the largest private arbitration provider in the country—is per se unconscionable. Plaintiffs cite no court in history that has so held. Nor could they, because courts routinely uphold agreements to arbitrate under the JAMS Rules. This Court should do the same.

## MEMORANDUM OF POINTS AND AUTHORITIES

**Introduction**

Prisma's opening brief cites *over two dozen* Supreme Court and Ninth Circuit cases demonstrating that Arbitration Agreements like Prisma's constitute binding, enforceable contracts. In contrast, Plaintiffs' Opposition does not cite—let alone meaningfully engage with—*any* of these authorities other than a passing reference to one of them in the Legal Standard section. *See* Opp. at 3 (quoting *AT&T Techs., Inc. v. Comm's Workers of Am.*, 475 U.S. 643, 648 (1986)). Plaintiffs do not dispute that the Lensa Terms of Use ("TOU") constitute a binding contract, that Plaintiffs agreed to the TOU, that Plaintiffs' claims fall within the scope of the TOU's Arbitration Agreement, or that the TOU contains a valid class action waiver. Instead, Plaintiffs make only two arguments: that two provision in the Arbitration Agreement are unconscionable, and that the Agreement is illusory because it supposedly conflicts with the JAMS Consumer Arbitration Minimum Standards ("JAMS Standards"). Neither argument holds water.

It is also worth noting that most of Plaintiffs' arguments have nothing to do with the TOU itself and instead imply that ***any*** agreement to arbitrate before JAMS is per se invalid. JAMS is one of the largest private arbitration providers in the nation, and Plaintiffs' theory likely would impact millions of consumer contracts across the country. Yet Plaintiffs cite *no authority* in support of this shocking conclusion and ignore the fact that courts routinely uphold agreements to arbitrate under the JAMS Streamlined Arbitration Rules & Procedures ("JAMS Rules").

## I.     The Arbitration Agreement Is Not Unconscionable.

"[P]arties challenging the enforceability of an arbitration agreement bear the burden of proving that the provision is unenforceable." *Mortensen v. Bresnan Comms., LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) (emphasis omitted). "Under California law, a contract is unenforceable only when it is ***both*** procedurally and substantively unconscionable." *Callahan v. Paychex N. Am. Inc.*, 2022 WL 11902205, at *4 (N.D. Cal. Oct. 20, 2022) (citations omitted) (Breyer, J.).[2] The Parties' Arbitration Agreement is neither. To the contrary, as shown in Prisma's Opening Brief, courts consistently uphold and enforce arbitration agreements like Prisma's. Mot. at 9-10 (collecting cases). In the first instance, however, any question of the TOU's validity can be left to the arbitrator because that is what the Parties' agreement requires.

---

[2] Except where otherwise noted, all emphasis in quotations is added.

DEFENDANT PRISMA LABS, INC.'S REPLY ISO MOTION TO COMPEL ARBITRATION          23-cv-00680-CRB

1

**A.      The Arbitration Agreement Is Procedurally Valid.**

Plaintiffs claim that "there can be no argument but that the arbitration provision is a contract of adhesion." Opp. at 7. The Ninth Circuit disagrees. Plaintiffs completely ignore that the TOU allow users to opt out of the Arbitration Agreement within thirty days and continue using the App. TOU § 15. The Ninth Circuit, has consistently held that under California law "***an arbitration agreement is not adhesive if there is an opportunity to opt out of it***." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016); *accord, e.g.*, *Cir. City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002). Accordingly, courts in this District uphold arbitration agreements containing 30-day opt out provisions nearly identical to Prisma's. *Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 877 (N.D. Cal. 2018), *aff'd*, 816 F. App'x 68 (9th Cir. 2020); *McLellan v. Fitbit, Inc.*, 2017 WL 4551484, at *5 (N.D. Cal. Oct. 11, 2017).

Moreover, even putting aside the opt-out provision, the Ninth Circuit has held that "[t]here is no procedural unconscionability in the presentation of [an] arbitration clause … which appears in the same size font as the rest of the [TOU] with key terms bolded," much less one as heavily emphasized as the provision is here. *Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 864 (9th Cir. 2017). As shown in Prisma's Motion, the TOU say three times—twice in all bold and once in all bold *and* all caps—that *all disputes* shall be resolved through arbitration. Mot. at 4-5, TOU Preamble, § 15. This very Court has held at least twice that such provisions are not unconscionable. *Callahan*, 2022 WL 11902205, at *5 (upholding arbitration agreement that "ha[d] its own section with a bolded title" and was "is the same font size as the rest of the document"); *Blau v. AT&T Mobility*, 2012 WL 10546, at *5 (N.D. Cal. Jan. 3, 2012) (Breyer, J.) (similar).

**B.      The Arbitration Agreement Is Substantively Fair.**

Plaintiffs claim that the Arbitration Agreement is substantively unconscionable because: (1) it requires Plaintiffs to arbitrate in California; (2) the JAMS Rules put them "in jeopardy" of having to pay certain costs and fees; and (3) the JAMS Rules provide for different discovery from the Federal Rules. As the Court may know from its undoubtedly extensive experience with JAMS, Plaintiffs misstate what the TOU and JAMS rules *actually* provide. But even if that were not so, the terms Plaintiffs point to are not unconscionable. Finally, even in the unlikely event that the Court did find these terms unconscionable (which they are not), the Court should sever them from the rest of the Agreement.

1.    **The Forum Selection Clause Is Valid.**

The TOU provides that "all disputes arising out of or relating to these Terms or Lensa will be resolved through confidential binding arbitration held in Santa Clara County." TOU § 15. Contrary to Plaintiffs' argument, California law "favors enforceability of such forum selection clauses." *Smith, Valentino & Smith, Inc. v. Superior Ct.*, 551 P.2d 1206 (Cal. 1976). Thus, "courts have placed a substantial burden on a plaintiff seeking to defeat such a clause, requiring it to demonstrate enforcement of the clause would be unreasonable under the circumstances of the case." *CQL Original Prod., Inc. v. N.H.L Players' Assn.*, 46 Cal. Rptr. 2d 412, 415-16 (Ct. App. 1995).[3]

Plaintiffs claim that enforcing the forum selection clause is unconscionable because it requires them to arbitrate "thousands of miles from home." Opp. at 8. But "[w]here the parties have agreed to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1091-92 (9th Cir. 2018). Thus, "courts must enforce a forum-selection clause unless the contractually selected forum affords the plaintiffs no remedies whatsoever." *Id.*; *cf. Hendricks v. AT & T Mobility, LLC*, 823 F. Supp. 2d 1015, 1021 (N.D. Cal. 2011) (Breyer, J.) (rejecting the plaintiff's argument that arbitration would be cost-prohibitive).[4] Plaintiffs offer no reason to think that they would have "no remedies whatsoever" before a JAMS arbitrator. *Cf. Marchand v. Northrop Grumman Corp.*, 2017 WL 2633132, at *13 (N.D. Cal. June 19, 2017) (granting motion to compel under AAA or JAMS rules and noting that "there is no reason to believe that an arbitrator under the AAA and/or JAMS Rules will act unreasonably or unlawfully" (cleaned up)).

Even if burden and expense were relevant (and they are not), such analysis must consider the specific "circumstances of the parties." *Nagrampa*, 469 F.3d at 1288. Although Plaintiffs acknowledge this standard, Opp. at 8, they do not explain with any specificity how enforcing the forum-selection clause would be unreasonable under the circumstances. Plaintiffs claim only that they "are Illinois residents, meaning they

---

[3] Indeed, even *Nagrampa v. MailCoups, Inc.*, on which Plaintiffs rely, held that forum selection clauses are presumed to be "valid and should be given effect unless enforcement of the clause would be unreasonable." *Nagrampa*, 469 F.3d 1257, 1287 (9th Cir. 2006) (cited in Opp. at 8).

[4] *Accord, e.g.*, *SeeComm Network Servs. Corp. v. Colt Telecomms.*, 2004 WL 1960174, at *3 (N.D. Cal. Sept. 3, 2004) ("The cost of litigation or the fact that a foreign forum poses inconvenience does not prevent enforcement of a forum-selection clause."); *Smith, Valentino & Smith, Inc. v. Superior Ct.*, 551 P.2d 1206 (Cal. 1976) (rejecting arguments of "inconvenience and expense" of litigating in Pennsylvania).

must travel across country to enforce their rights." Opp. at 4-5. But Plaintiffs themselves ***already chose to file suit in this District*** (which contains Santa Clara County) and stated in their complaint that "venue is proper" here. Compl. ¶ 11. Plaintiffs cannot now argue that arbitrating in the same venue in which they filed suit is somehow unreasonable. *See Big Daddy Games, LLC v. Reel Spin Studios, LLC,* 2012 WL 2395186, at *1 (E.D. Wis. June 25, 2012) ("Having already filed an action in the Western District, the Plaintiff is all but estopped from arguing that its original choice of forum is somehow inconvenient.").

Plaintiffs also ignore that they do not actually need to travel to California to arbitrate their claims, especially in 2023 when video proceedings have become routine. Under JAMS Rule 17(g), hearings may be conducted "in person or virtually by conference call, videoconference or using other communications technology with participants in one or more geographical places, or in a combined form." Rule 18 also permits the parties to "waive oral Hearing and submit the dispute to the Arbitrator … based on written submissions and other evidence." Since at least 2005—well before Covid and the ensuing proliferation of videoconferencing and Zoom depositions—California courts have repeatedly found that such options defeat objections that a forum selection clause is unduly burdensome.

*Zaitzeff v. Peregrine Fin. Grp., Inc.*, 2008 WL 11408422 (C.D. Cal. June 23, 2008), is directly on point. There, the plaintiff claimed he would be unreasonably burdened by an agreement that required him to arbitrate in Illinois. The court rejected that argument because there was "no reason why Zaitzeff would be unable to appear or to call witnesses telephonically or via video conference or video deposition in Illinois." *Id.* at *12. Thus, the court concluded, "[g]iven the technological advances that allow parties to participate long-distance in court proceedings, the court is unable to conclude that Zaitzeff has met his heavy burden of proof to clearly show that enforcement of the forum selection clause would be unreasonable and unjust." *Id.*; *accord, e.g.*, *Tura v. Med. Shoppe Int'l, Inc.*, 2010 WL 11506428, at *16 (C.D. Cal. Mar. 3, 2010); *Pratt v. Silversea Cruises, Ltd., Inc*., 2005 WL 1656891, *4 (N.D. Cal. July 13, 2005); *Avanesians v. Coll. Network, Inc.*, 2016 WL 3570424, at *6 (Ct. App. June 23, 2016).

The cases Plaintiffs rely on, such as *Nagrampa* and *Bolter v. Superior Court*, 104 Cal. Rptr. 2d 888 (Ct. App. 2001) (cited in Opp. at 8), are inapposite for several reasons. First as the *Tura* court observed over a decade ago, those cases did not involve a possibility of appearing telephonically or relying on written submissions. 2010 WL 11506428, at *16 (concluding that "[t]he present case is plainly distinguishable from

both *Nagrampa* and *Bolter*" because the arbitrator "allows parties to submit claims entirely on the basis of written submissions"). Second, they both involved situations where the parties did not originally agree to the forum selection clause. In *Bolter*, at the time the parties entered a contract, the defendant "was headquartered in California, and the franchise agreement did not contain an arbitration provision. Thus, [the plaintiffs] never anticipated [the defendant] would relocate its headquarters to Utah and mandate that all disputes be litigated there." 104 Cal. Rptr. 2d at 894. Similarly, in *Nagrampa*, "the franchise-offering circular contained language suggesting that the out-of-state forum selection and choice of law clauses may not be enforceable under California law." 469 F.3d at 1290. Here, by contrast, the Parties' original agreement (the TOU) is explicit that claims would be arbitrated in Santa Clara County, California. Third, to the extent that *Bolter* and *Nagrampa* rely on financial hardship, those arguments are foreclosed by the Supreme Court's rulings in *Concepcion* and *Italian Colors*. *See Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013) ("[T]he fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to pursue* that remedy. (emphasis in original)"); *Hendricks*, 823 F. Supp. 2d at 1021 ("Plaintiff's more general argument, that the cost of pursuing his case on an individual basis would be prohibitive … is also foreclosed by *Concepcion*.").[5]

### 2. The TOU's Cost-Sharing Provision Is Not Unconscionable.

As Plaintiffs' brief recognizes, the JAMS Standards state that "the only fee required to be paid by the consumer is $250, which is approximately equivalent to current Court filing fees. *All other costs must be borne by the company*, including any remaining JAMS Case Management Fee and all professional fees for the arbitrator's services." (Opp. at 4 (quoting JAMS Standard No. 7)). Entirely consistent with this, TOU § 15 explicitly provides:

> one individual. You and the Company agree that for any arbitration you initiate, you will pay the filing fee and the Company will pay the remaining JAMS fees and costs. For any arbitration initiated by the Company, the Company will pay all JAMS fees and costs. You and the Company agree that the state or federal courts of the State of

Nevertheless, Plaintiffs claim—without any basis—that because the TOU incorporates the JAMS Rules, "any plaintiff who brings an arbitration against Prisma risks paying *all* of the arbitrator's costs and

---

[5] *Comb v. PayPal, Inc.*, 218 F. Supp. 2d 1165 (N.D. Cal. 2002) (cited in Mot. at 8) is also inapposite because the plaintiffs' claims were "minimal" ($55 on average), *id.* at 1177, whereas BIPA provides statutory penalties of $1,000 or $5,000 per violation. 740 Ill. Comp. Stat. 14/20.

expenses." Opp. at 8 (emphasis original).[6]

Plaintiffs' argument is based on an implausible reading of the JAMS Rules. JAMS Rule 26(a) states, *inter alia*, that "[e]ach Party shall pay its *pro rata* share of JAMS fees and expenses … **unless the Parties agree on a different allocation of fees and expenses**." Then Rule 26(c), which Plaintiffs point to, states that "[t]he Parties are jointly and severally liable for the payment of JAMS Arbitration fees and Arbitrator compensation." Read in context, the most natural reading is that Rule 26 creates a default rule of equal fee sharing in non-consumer cases where the parties have not agreed otherwise. Here, however, it is clear that the TOU, which places all costs and fees (save for the filing fee) on Prisma, controls.[7]

Even worse, Plaintiffs do not even claim that they *will* be obligated to pay the costs of arbitration but merely that they "risk" having to do so. Opp. at 8. The Supreme Court has held that a mere "'risk' that [the plaintiff] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90-91 (2000); *accord Blau*, 2012 WL 10546, at *8 (refusing to consider "speculative" possibility plaintiff would have to pay arbitration fees). Under *Green Tree*, Plaintiffs must offer concrete "evidence to establish the amount of arbitration fees [they are] likely to incur" and that they "lack[] the ability to pay fees in such amount." *TradeHill, Inc. v. Dwolla, Inc.*, 2012 WL 1622668, at *5 (N.D. Cal. May 9, 2012).[8] Because Plaintiffs offer no such evidence, their argument fails. And notably, the $250 filing fee is significantly less than the statutory damages of $1,000 per violation under BIPA. 740 Ill. Comp. Stat. 14/20.

### 3. The JAMS Rules Provide for Adequate Discovery.

Plaintiffs also claim that the TOU is unconscionable because "[b]y mandating the JAMS streamlined

---

[6] Plaintiffs also argue in a footnote that the "JAMS fees and costs" Prisma agreed to pay may be "separate from the Arbitrator compensation and expenses." Opp. at 5 n.3. But JAMS Standard No. 7 includes the "fees for the arbitrator's services" among the JAMS "costs" that must be paid by the company. There is no reason to think the words "JAMS fees and costs" mean something different in the TOU.

[7] Even if the meaning of Rule 26 were ambiguous, the Supreme Court and Ninth Circuit have repeatedly held that "doubts" and ambiguities in arbitration agreements "should be resolved in favor of coverage." *AT&T Techs.*, 475 U.S. at 650; *Volt Info. Scis., Inc. v. Bd. of Trustees of Stanford Univ.*, 489 U.S. 468, 476 (1989); *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016).

[8] Consistent with *Green Tree*, the cases cited by Plaintiffs involved situations where the plaintiff definitely would have to pay impermissible fees. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 685 (Cal. 2000) (agreement required parties to split costs); *Mills v. Facility Sols. Grp., Inc.*, 300 Cal. Rptr. 3d 833, 847, 848-51 (Ct. App. 2022) (appealing party was required to pay costs of appeal and losing party was required to pay attorneys' fees). Thus, they do not support Plaintiffs' theory that a "risk" of paying such fees is sufficient.

rules, the arbitration provision cabins discovery to what Defendant voluntarily chooses to provide," and the JAMS Rules supposedly afford "no ability to compel evidence that Defendant does not wish to reveal: no interrogatories, no requests to admit, no expert disclosures, no depositions." Opp. at 9.

Plaintiffs' entire argument relies on inapposite law. The holdings in *Armendariz* and *Mills* (cited by Opp. at 9), that arbitration must afford "more than minimal discovery," *Armendariz*, 6 P.3d at 682, are limited to claims under California's Fair Housing and Employment Act ("FEHA") because "[t]hrough the FEHA … the Legislature created substantive ***and procedural*** rights not just for the benefit of individuals but also for public purposes; accordingly, those statutory rights are unwaivable." *Giuliano v. Inland Empire Pers., Inc.*, 58 Cal. Rptr. 3d 5, 14 (Ct. App. 2007). *Armendariz* simply does not apply to consumer arbitration agreements. *See, e.g.*, *id.* at 16 ("*Armendariz* does not apply to this case because it is not based on the FEHA or a fundamental public policy that is tied to a constitutional or statutory provision. Accordingly, we need not consider whether the arbitration clause complies with *Armendariz*."); *Parker v. McCaw*, 24 Cal. Rptr. 3d 55, 64 (Ct. App. 2005) (*Armendariz* does not apply to non-FEHA claims).

Even if *Armendariz* applied to this case (which it does not), the JAMS Rules afford far more than the "minimal discovery" required. The Ninth Circuit has already considered and rejected Plaintiffs' argument that "limitations on discovery are substantively unconscionable" when they "allow less discovery than the federal rules" because "arbitration is meant to be a streamlined procedure." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1270 (9th Cir. 2017). Indeed, courts consistently find that the JAMS Rules allow adequate discovery under any standard. *E.g.*, *Peoples v. Children's Hosp. of Cent. Cal.*, 2020 WL 469338, at *3 (E.D. Cal. Jan. 29, 2020) (finding that JAMS rules "requiring parties to cooperate in good faith for the exchange of non-privileged documents; provide names of potential witnesses and experts, along with their corresponding reports; and allowing for depositions" provide adequate discovery).[9]

Plaintiffs also mischaracterize what the JAMS Rules allow. It is true that JAMS Rule 13(a) directs parties to "cooperate in good faith in the voluntary and informal exchange of all non-privileged documents

---

[9] *Accord, e.g.*, *Sanchez v. Gruma Corp.*, 2019 WL 1545186, at *8 (N.D. Cal. Apr. 9, 2019) (holding that JAMS rule "requiring the arbitrator to approve further discovery beyond the initial exchange of information did not violate *Armendariz*"); *Marchand*, 2017 WL 2633132, at *13 (granting motion to compel under AAA or JAMS rules); *Bennett v. Peters*, 2004 WL 1398542, at *3 (Ct. App. June 23, 2004) (compelling arbitration under JAMS rules). Because *Armendariz* does not apply to non-employment cases, these cases involve the JAMS Employment Arbitration Rules, *available at* https://www.jamsadr.com/rules-employment-arbitration/, which are similar, but not identical, to the JAMS Rules involved in this case.

and information." But that very same paragraph also provides that "[t]he necessity of additional information exchange," *i.e.*, the exchange of non-voluntary information, "***shall be determined by the Arbitrator*** based upon the reasonable need for the requested information, the availability of other discovery options and the burdensomeness of the request on the opposing Parties and the witness." Likewise, Rule 13(c) authorizes the arbitrator to decide discovery disputes, which would be meaningless if, as Plaintiffs claim, discovery were "cabined" "to what Defendant voluntarily chooses to provide." Opp. at 9. Plaintiffs also are incorrect that JAMS does not provide for depositions. JAMS Rule 17(e) specifically permits depositions. And, again contrary to Plaintiffs' characterization, JAMS Rules 13 and 15(a) require mandatory disclosures of the identity of expert witnesses.

Finally, as the Supreme Court and Ninth Circuit have recognized, Plaintiffs' theory that arbitration must allow full-blown formal discovery consisting of interrogatories, requests for admission, and expert reports would undermine the streamlined nature of arbitration that Congress sought to protect. The Supreme Court has observed that the fact that arbitration "procedures might not be as extensive as in the federal courts," is a feature, not a bug. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) ("[B]y agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Id.* (cleaned up); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011) (noting that while "Parties *could* agree to arbitrate pursuant to the Federal Rules of Civil Procedure," doing so "is not arbitration as envisioned by the FAA, lacks its benefits, and therefore may not be required by state law" (emphasis in original)); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010) ("In bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes."); *Poublon*, 846 F.3d at 1270 (noting that "arbitration is meant to be a streamlined procedure").

### C. The Parties Delegated Questions of the TOU's Validity to the Arbitrator.

In the unlikely event the Court concludes that there is a legitimate question regarding the Agreement's validity, it would be proper to leave that issue to be decided by the arbitrator. Parties to an arbitration agreement can "agree to arbitrate 'gateway' questions of arbitrability." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) (cleaned up). Such delegation clauses are treated as separate, antecedent

-8-

arbitration agreements. *Id.* at 70. The Supreme Court has repeatedly held that "if a valid [arbitration] agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019); *see also Rent-A-Center*, 561 U.S. at 68-69.

Here, the Parties clearly and unmistakably delegated the question of whether the Arbitration Agreement is valid because the TOU incorporates the JAMS Rules (as Plaintiffs admit). TOU § 15; Opp. at 2. Rule 8(b) of those Rules provides that: "Jurisdictional and arbitrability disputes, ***including disputes over the formation, existence, validity, interpretation or scope of the agreement*** … shall be submitted to and ruled on by the Arbitrator." The Ninth Circuit, has held that the incorporation of such rules "constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *see also Luckert v. Tesla Energy Operations, Inc.*, 2021 WL 3721967, at *1 (N.D. Cal. Aug. 5, 2021) (holding that an agreement that "incorporates the JAMS Streamlined Arbitration Rules into its arbitration provision" "'clearly and unmistakably' delegate[s] the question of arbitrability to the arbitrator under *Brennan*.").

### D.     In the Alternative, Any Unconscionable Provision Can Be Severed.

Even if the Court were to reach the issue of unconscionability (which it should not) and determine that part of the Arbitration Agreement is unconscionable (which it is not), the obvious solution is simply to sever that provision from the Agreement. California law has a strong presumption in favor of severability. *See, e.g.*, Cal. Civ. Code § 1599 ("Where a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest."); *Serafin v. Balco Properties Ltd., LLC*, 185 Cal. Rptr. 3d 151, 165 (Ct. App. 2015) ("[A] court should sever an unconscionable provision unless the agreement is so 'permeated' by unconscionability that it cannot be cured by severance."). This is especially so where, as here, the TOU itself contains a severability clause. *See* TOU § 23 ("If any provision of these Terms is held invalid and unenforceable … that provision will be enforceable to the maximum extent permissible and the other provisions of these Terms will remain in full force and effect."); *Ehlers Elevators, Inc. v. Beta Seed Co.*, 2002 WL 31492719, at *10-11 (Ct. App. Nov. 8, 2002) (finding severability clause nearly identical to Prisma's militated in favor of severing forum selection clause and compelling arbitration).

1

2   Thus, even when they find provisions in arbitration agreements unconscionable, California state and

3   federal courts sever them and still compel arbitration. *E.g.*, *Pope v. Sonatype, Inc.*, 2015 WL 2174033, at

4   *7 (N.D. Cal. May 8, 2015) (severing venue and fee provisions and compelling arbitration under JAMS

5   rules); *Fitzgerald v. Grand Circle, LLC*, 2020 WL 6152027, at *4 (E.D. Pa. Oct. 20, 2020) (holding that

6   "[c]lauses regarding forum location and fee-splitting are logistical concerns and can be severed while

7   maintaining the core agreement to arbitrate" and compelling arbitration under JAMS rules); *Wilmot v.*

8   *McNabb*, 269 F. Supp. 2d 1203, 1212 (N.D. Cal. 2003) (compelling arbitration and noting that "[e]ven if

9   the offending provisions are not severable, they can be excised from the contract by means of limitation").

10  This approach also serves the FAA's aim, repeatedly recognized by the Supreme Court, of enforcing

    arbitration agreements. *McMullen v. Meijer, Inc.*, 166 F. App'x 164, 168-69 (6th Cir. 2006).

11      Indeed, several of the cases Plaintiffs cite reached the same result. For example, Plaintiffs cite *Little*

12  *v. Auto Stiegler, Inc.*, 63 P.3d 979 (Cal. 2003) (cited in Opp. at 6), for the proposition that "the Court cannot

13  rewrite Defendant's arbitration provision to strike the offensive provisions, nor to impose the minimum

14  consumer fairness requirements that Defendant left out." In fact, however, *Little* held precisely the opposite,

15  concluding that the "arbitration agreement is valid and enforceable once the unconscionable appellate

16  arbitration provision is deleted." *Id.* at 1075. Under *Little*, severance is only inappropriate where "there is

17  no single provision a court can strike or restrict in order to remove the unconscionable taint" and the court

18  would instead have to "reform the contract … by augmenting it with additional terms." *Id.* at 1075-76.

19  Similarly, the *Bolter* court held that "[u]nconscionability can be cured by striking [a forum selection clause],

20  leaving an otherwise valid and complete agreement to submit disputes to arbitration." 104 Cal. Rptr. 2d at

21  895-96.[10] The terms Plaintiffs point too are equally severable here.

22  ## II.   The JAMS Rules and Standards Do Not Make the Arbitration Agreement Illusory.

23      Plaintiffs also claim that the Arbitration Agreement is illusory because it is purportedly inconsistent

24  with the JAMS Standards and "[t]he parties cannot have agreed to an arbitration before JAMS that JAMS

25  will not hear." Opp. at 4-5. In particular, Plaintiffs claim that (1) the TOU's forum-selection clause conflicts

26  with JAMS Standard No. 5 requiring that "[t]he consumer must have a right to an in-person hearing in his

27

28  _____

    [10] *Macias v. Excel Bldg. Servs. LLC*, 767 F. Supp. 2d 1002 (N.D. Cal. 2011) (cited in Opp. at 6), is inapposite
    for several reasons including that the unconscionability affected the entire agreement, rather than specific
    provisions, and that curing the unconscionability would require the addition of new terms. *Id.* at 1011-12.

    -10-

or her hometown area," and (2) JAMS's own Rules are internally inconsistent with JAMS Standard No. 7 limiting "the only fee required to be paid by the consumer" to $250. The Court need not reach these issues because the hypothetical question of how JAMS would resolve these supposed contradictions should be decided by the arbitrator rather than the Court. But whoever decides them, neither argument has merit.

### A.   Hypothetical Questions of How JAMS Would Resolve Supposed Conflicts Should be Decided by the Arbitrator

Questions about whether an agreement comports with the JAMS Standards and how JAMS would resolve any conflict should be decided by the arbitrator. As discussed above (Part I.C), the Parties delegated questions of the TOU's interpretation and validity to the arbitrator. The California Court of Appeals in *Aanderud v. Superior Ct.*, 221 Cal. Rptr. 3d 225, 239 (Ct. App. 2017), refused to consider the exact argument Plaintiffs make here for precisely that reason. There, as here, the arbitration agreement stated that "JAMS shall administer the arbitration pursuant to its Streamlined Rules and Procedures," thereby delegating "threshold" "issues of arbitrability to the arbitrator." *Id.* at 236. Just like Plaintiffs in this case, the *Aanderud* plaintiffs argued that the incorporation of the "JAMS Rules that require pro rata sharing of arbitration expenses" was inconsistent with JAMS's "seventh minimum standard." *Id.* at 238-39. The court refused to consider this argument, concluding that "[t]he merits of the [plaintiffs'] contention are for the arbitrator, not us, to decide …. [I]t is up to the arbitrator to determine whether this dispute is arbitrable, which includes whether the arbitration provision meets the minimum standards of fairness such that JAMS will administer the arbitration …." *Id.* at 239.

Deferring to the arbitrator is also prudent because Plaintiffs' argument relies on the entirely speculative and hypothetical assumption that JAMS would refuse to arbitrate their claims altogether. Opp. at 5. Plaintiffs offer no actual evidence that this is what JAMS would do or that JAMS has *ever* refused to arbitrate a case because of a supposed inconsistency with the JAMS Standards. It is a bedrock principle of Article III jurisprudence that courts do not issue advisory or hypothetical opinions regarding "speculative" possibilities that may or may not occur. *See, e.g.*, *Air Cal. v. U.S. Dep't of Transp.*, 654 F.2d 616, 622 (9th Cir. 1981) (issues of harm that would occur from possible future agency decision were "speculative" and therefore "unripe for determination"); *cf. Gateway Structures, Inc. v. Bd. of United Bhd.*, 779 F.2d 485, 490 (9th Cir. 1985) ("[I]t would be improper to allow the speculative possibility of subsequent NLRB decisions

DEFENDANT PRISMA LABS, INC.'S REPLY ISO MOTION TO COMPEL ARBITRATION          23-cv-00680-CRB

1    to prevent enforcement of the arbitrator's award….").

2          *Lee v. Chase Manhattan Bank*, 2008 WL 698482 (N.D. Cal. Mar. 14, 2008), *aff'd,* 348 F. App'x

3    205 (9th Cir. 2009), is instructive. There, the plaintiffs sought to challenge an arbitration provision as

4    unconscionable "based on conjecture about what might happen if, at some point in the future, Plaintiffs

5    attempted to arbitrate their disputes but were unable to do so." *Id.* at *2. Noting that "Plaintiffs nowhere

6    allege that they have attempted to arbitrate a dispute" and been "thwarted," the Court concluded that "their

7    purported injury rests on the assumption that, if Plaintiffs were to request arbitration, either defendants

8    would insist on courtroom litigation ***or the arbitrator would sua sponte refuse to arbitrate even if both***

9    ***sides agreed to arbitrate the dispute in question***." *Id.* at 2. Thus, the court held, that because "Plaintiffs

10   have taken no steps to actually attempt to arbitrate the disputes," the argument was not justiciable under

11   Article III. *Id.* The posture here is identical. Plaintiffs' entire argument turns on the speculative assumption

12   that JAMS would refuse to arbitrate the case, but, as in *Lee*, they do not claim that they have attempted to

13   comply with the Arbitration Agreement or offer any concrete evidence that JAMS would refuse to arbitrate.

14   **B.      JAMS Would Not Deny Jurisdiction based on the TOU's Forum Selection Clause.**

15          The Arbitration Agreement's forum selection clause does not conflict with JAMS Standard No. 5

16   because, in the Ninth Circuit, forum selection clauses are presumed to be non-exclusive absent an express

17   statement to the contrary. *In re 1250 Oceanside Partners*, 652 F. App'x 588, 589-90 (9th Cir. 2016); *Reddam*

18   *v. KPMG LLP*, 457 F.3d 1054, 1061 (9th Cir. 2006). Here, the Agreement does not state that the arbitration

19   must take place in Santa Clara, California to the exclusion of all other locales. Notably, the specification of

20   "arbitration held in Santa Clara County, California" stands in stark contrast with the next paragraph, which

21   states that "the state or federal courts of the State of California and the United States sitting in Santa Clara

22   County, California have ***exclusive jurisdiction*** over any appeals and the enforcement of an arbitration

23   award." TOU § 15. This further shows that the specified forum for the arbitration itself is non-exclusive.

24   Plaintiffs' claim that "Defendant's arbitration provision mandates one location and one location only," Opp.

25   at 4, is simply incorrect.

26          Even if Plaintiffs' reading of the TOU were right, it is unlikely that JAMS would refuse to arbitrate

27   the case. For example, JAMS may conclude that Plaintiffs waived the right to object to arbitration in Santa

28   Clara County by voluntarily bringing this suit in the Northern District of California, *see supra* at 3-4, that

JAMS Standard No. 5 does not apply to agreements containing opt-out provisions, *see supra* at 2, or that the forum selection clause is severable from the rest of the Arbitration Agreement. *See supra* Part I.D.

In the alternative, if the Court were to reach the issue and find a conflict, it should sever the forum selection clause and compel arbitration under the default JAMS Rules. At least two federal courts have taken that approach in response to the exact argument Plaintiff makes here. In *Fitzgerald*, 2020 WL 6152027, the Plaintiff claimed that "contradictions between the Agreement and the JAMS Rules prevent arbitration," including that "[t]he Agreement requires that the arbitration occur in Boston, Massachusetts." *Id.* at *2. The plaintiff claimed, just like Plaintiffs here, that the "proposed forum is illusory, and the arbitration clause is unenforceable because there would be no one to arbitrate." *Id.* The court rejected this argument, concluding that "[c]lauses regarding forum location … are logistical concerns and can be severed while maintaining the core agreement to arbitrate," and compelled arbitration under the JAMS Rules. *Id.* Similarly, in *Pope*, the court concluded that even though the arbitration agreement contained "two clauses that appear to conflict with JAMS rules," "simply severing those provisions or interpreting them as not applicable in California and proceeding under the incorporated JAMS rules cures the unconscionability … and preserves the intent of the Agreement." 2015 WL 2174033, at *6. As the *Pope* court correctly observed, "the most logical interpretation of the Arbitration Agreement is that the JAMS provisions were intended to apply if a provision in the Arbitration Agreement conflicted with a JAMS requirement." *Id.* at *4. Thus, even if the Parties' forum selection agreement were in conflict with the JAMS Standards (which it is not), the Court should sever that provision, and arbitration should proceed under the JAMS Rules.

**C.     The TOU Complies with the JAMS guidelines Regarding Costs and Fees.**

Plaintiffs' supposed conflict regarding costs and fees is even more farfetched. As discussed above, *supra* at 5-6 & n.6, the TOU is entirely *consistent* with the JAMS Standards No. 7, which requires:

> 7. With respect to the cost of the arbitration, when a consumer initiates arbitration against the company, the only fee required to be paid by the consumer is $250, which is approximately equivalent to current Court filing fees. All other costs must be borne by the company, including any remaining JAMS Case Management Fee and all professional fees for the arbitrator's services. When the company is the claiming party initiating an arbitration against the consumer, the company will be required to pay all costs associated with the arbitration.

The language in the TOU is nearly identical. TOU § 15 states:

> precise over any type of class or representative proceeding or preside over any proceeding involving more than one individual. You and the Company agree that for any arbitration you initiate, you will pay the filing fee and the Company will pay the remaining JAMS fees and costs. For any arbitration initiated by the Company, the Company will pay all JAMS fees and costs. You and the Company agree that the state or federal courts of the State of California and the United States sitting in Santa Clara County, California have exclusive jurisdiction over any appeals and the enforcement of an arbitration award.

Because Plaintiffs cannot credibly argue that the TOU itself conflicts with the JAMS Standards, they instead argue that JAMS's own Rules do. In particular, they claim that JAMS Standard No. 7 conflicts with JAMS Rule 26(c), which provides that "[t]he Parties are jointly and severally liable for the payment of JAMS Arbitration fees and Arbitrator compensation and expenses." In other words, ***Plaintiffs argue that JAMS would refuse to arbitrate their claims precisely because the TOU "incorporate[es] the JAMS streamlined rules."*** Opp. at 5. This argument is absurd.

As explained above, the more plausible reading of JAMS Rule 26(c) is that it creates a default presumption of cost-splitting in non-consumer cases. There is no internal conflict with JAMS Standard No. 7, which relates to consumer claims. Moreover, even if such a conflict existed, it is utterly implausible that JAMS would refuse to arbitrate due to an internal conflict in JAMS's own rules. More likely, the arbitrator would either find that Rule 26(c) trumps the JAMS Standards or sever Rule 26(c) from the Agreement, just as courts routinely sever cost-splitting provisions that would otherwise preclude arbitration. *E.g.*, *Fitzgerald*, 2020 WL 6152027, at *2, 4 (severing arbitration agreement requirement "that consumer-plaintiffs pay $1000 in arbitration fees" because JAMS "caps the amount consumers can be required to pay at $250"); *Pope*, 2015 WL 2174033, at *7 (severing cost-sharing provision, granting motion to compel arbitration, and directing that "[t]he applicable JAMS rules on venue and fees shall apply"); *Lang v. Skytap, Inc.*, 347 F. Supp. 3d 420, 433-34 (N.D. Cal. 2018) (severing cost-splitting provision and compelling arbitration). Should the Court reach this question, it should follow the same approach for the same reasons.[11]

Finally, it is worth noting that Plaintiffs' arguments regarding JAMS fees and discovery rules have nothing to do with the Lensa TOU. Rather, Plaintiffs' position is that ***any*** agreement to arbitrate before JAMS is *per se* unconscionable or illusory because: (1) the JAMS Rules and Standards are internally

---

[11] Even if Plaintiffs were correct that JAMS could not or would not arbitrate their claims, the proper remedy under 9 U.S.C. § 5, and likewise under Cal. Civ. Proc. Code § 1281.6, would be for the Court to appoint an alternate arbitrator. *See, e.g.*, *Reddam*, 457 F.3d at 1061; *Inter@ctivate, Inc. v. Cubic Transp. Sys., Inc.*, 2007 WL 178429, at *8 (Ct. App. Jan. 25, 2007). Should the Court reach this issue, Prisma would be happy to provide further briefing on it or to propose alternate mediators.

inconsistent; and (2) the JAMS Rules provide less discovery than the federal rules. This would be a radical result affecting millions, of consumer contracts across the country. Yet Plaintiffs do not cite a single case that has ever reached that shocking conclusion. Nor could they, because the undeniable truth is that courts consistently compel arbitration under the JAMS Rules. *See, e.g.*, *Wynn Resorts, Ltd. v. Atl.-Pac. Cap., Inc.*, 497 F. App'x 740, 743 (9th Cir. 2012) (reversing denial of motion to compel arbitration under JAMS Rules); *Ford v. Hyundai Motor Am.*, 2021 WL 7448507, at *10 (C.D. Cal. Oct. 5, 2021) (compelling "individual, binding arbitrations" under JAMS Rules); *Fridman v. Uber Techs., Inc.*, 2019 WL 1385887, at *6 (N.D. Cal. Mar. 27, 2019) (finding arbitration agreement was not unconscionable and granting motion to compel arbitration before JAMS); *Aanderud*, 221 Cal. Rptr. 3d at 239-40 (reversing denial of motion to compel arbitration under JAMS Rules). In short, Plaintiffs have not met their "substantial burden" to show that they should not be held to the binding Arbitration Agreement they voluntarily agreed to and chose not to opt out of. *CQL*, 6 Cal. Rptr. 2d at 415. The Court, like so many before it, should enforce that agreement.

**Conclusion**

For the foregoing reasons, and those set forth in Prisma's Motion to Compel, Plaintiffs should be required to arbitrate their claims on an individual basis.

Dated: July 12, 2023

Respectfully Submitted,

By: */s/ Brenda R. Sharton*

Brenda R. Sharton (admitted *Pro Hac Vice*)
DECHERT LLP
One International Place,
100 Oliver Street, 40th Floor
Boston, MA 2110-2605
Telephone: (617) 728-7113
Facsimile: (617) 275-8374
Email: brenda.sharton@dechert.com

Benjamin M. Sadun (SBN 287533)
DECHERT LLP
633 W. 5th Street, Suite 4900
Los Angeles, CA 90071
Telephone: (213) 808-5700
Facsimile: (213) 808-5760
Email: benjamin.sadun@dechert.com

Theodore E. Yale (*Pro Hac Vice* forthcoming)
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-4000
Facsimile: (215) 655-2455
Email: theodore.yale@dechert.com

*Attorneys for Defendant Prisma Labs, Inc.*