IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK FLORA, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>PRISMA LABS, INC.,<br><br>　　　　Defendant. | Case No. 23-cv-00680-CRB<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION** |

Plaintiffs Jack Flora, Nathan Stoner, Courtney Owens, Eric Matson, and D.J.[1] ("Plaintiffs") bring this putative class action against Defendant Prisma Labs, Inc. ("Prisma"), accusing Prisma of "collect[ing]" their "facial geometry" through Plaintiffs' use of Prisma's app, Lensa. See Compl. (dkt. 1). Plaintiffs contend that Lensa collects and stores the biometric data of users' faces obtained from their photos, violating the Illinois Biometric Information Privacy Act (BIPA). Prisma moves to compel arbitration, because Plaintiffs assented to Lensa's Terms of Use, which includes a binding arbitration clause. See Mot. (dkt. 21).

As explained below, finding this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), the Court vacates the hearing scheduled for August 18, 2023, and GRANTS Prisma's motion.

---

[1] D.J., a minor, brings his claims anonymously. Compl. ¶ 7.

## I.  BACKGROUND

Prisma's app, Lensa, allows users to upload photos to edit and retouch.  Compl. ¶ 1.  In late 2022, Lensa's popularity skyrocketed with the launch of its "magic avatar" feature—using AI to turn user's photos into artistic or cartoonish depictions of their likeness, applying different styles such as "cosmic," "anime," or "fairy princess."  Id. ¶¶ 14, 17.  Criticism from many corners soon followed: Artists contended that Lensa employed AI trained on copyrighted images created by humans who received no compensation for their contributions to the images generated by Lensa, id. ¶ 25; users found that the app would create sexualized images from non-sexual, fully-clothed photos, id. ¶ 26; and, the subject of this lawsuit, advocates concerned with Lensa users' privacy argued that Prisma was capturing and retaining "the facial geometry of the subjects of the images" uploaded to Lensa, without their subjects' consent.  Id. ¶ 27.

When a user downloads the Lensa app, they are required to agree to Lensa's Terms of Use and Privacy Policy to use it.  Compl. ¶ 19.  Each of the Plaintiffs allege that they "received disclosure" of Lensa's Privacy Policy and agreed to its Terms of Use when they downloaded the app in December 2022.  Id. ¶¶ 3–7.

At issue in this motion is the arbitration provision in Lensa's Terms of Use.  The section, titled "Dispute Resolution; Binding Arbitration," appears in larger, bolded font (like the other section headings in the document) and states in smaller, bolded font underneath it: "Please read the following Section carefully because it requires you to arbitrate certain disputes and claims with the Company and limits the manner in which you can seek relief from us."  Sadun Decl. (dkt. 21-1) Ex. A at 10 ("Terms of Use").[2]  The provision states that "all disputes arising out of or relating to these Terms or Lensa will be resolved through confidential binding arbitration held in Santa Clara County, California in accordance with the Streamlined Arbitration Rules and Procedures ("Rules") of the Judicial Arbitration and Mediation Services ("JAMS"), which are available on the JAMS

---

[2] Because it is "not subject to reasonable dispute," the Court takes judicial notice of Lensa's then-current Terms of Use.  See Fed. R. Evid. 201(b); Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018).

1  website and hereby incorporated by reference." Id.  The provision also forbids class
2  arbitrations and class actions; requires that the enforceability of the arbitration provision be
3  governed by the FAA; gives the arbitrator "exclusive authority to make all procedural and
4  substantive decisions regarding any dispute"; that "for any arbitration [the user] intiate[s],
5  [the user] will pay the filing fee and the Company will pay the remaining JAMS fees and
6  costs"; and that users may opt out of binding arbitration if they notify Prisma in writing
7  within 30 days.  Id. at 10–11.

## II.  LEGAL STANDARD

The Federal Arbitration Act (FAA) provides that contractual arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 67–68 (2010).  Private agreements to arbitrate under the FAA are enforced according to their terms.  9 U.S.C. § 4.  Therefore, a party may petition a district court "for an order directing that such arbitration proceed in the manner provided for in such agreement."  Id.

Generally, a party "cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986) (internal quotation marks omitted).  However, courts have developed a "liberal federal policy favoring arbitration agreements," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983), such that courts should not refuse to enforce them unless the agreement is "not susceptible of an interpretation that covers the asserted dispute."  AT&T Techs., 475 U.S. at 650.  Under the FAA, in assessing the enforceability of a contractual arbitration provision, a district court's role is "limited to determining (1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue."  Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).  If the answer to both inquiries is affirmative, then the FAA requires the court to enforce the agreement in accordance with its terms.  Id.  "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for

3

arbitration." Green Tree Fin. Corp.- Ala. v. Randolph, 531 U.S. 79, 91 (2000).

## III. DISCUSSION

Plaintiffs make two arguments against compelling arbitration:[3] First, the arbitration provision is unconscionable; and second, because some provisions in the arbitration agreement arguably fall below JAMS' Consumer Arbitration Minimum Standards, the arbitration provision is illusory.

### A. Unconscionable

First, Plaintiffs argue that the arbitration agreement is unenforceable because it is unconscionable. In analyzing contracts under the FAA, courts generally "apply ordinary state-law principles that govern the formation of contracts." First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1175 (9th Cir. 2014). Because the choice-of-law provision in Lensa's Terms of Use requires that California law be applied, see Terms of Use at 11, the Court applies California law to the extent that it does not directly conflict with the FAA.[4] Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp., 622 F.3d 996, 1002 (9th Cir. 2010). Under California law, a contract is unenforceable when it is both procedurally and substantively unconscionable:

> [T]he prevailing view is that procedural unconscionability and substantive unconscionability need not both be present to the same degree: Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation . . . in proportion to the greater harshness or unreasonableness of the substantive terms themselves.

Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1280 (9th Cir. 2006) (internal quotation marks omitted) (quoting Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (2000)).

---

[3] Plaintiffs do not argue that they did not assent to Lensa's Terms of Use, or that the arbitration clause in the Terms of Use does not cover their claims.

[4] Where state law directly conflicts with the FAA, the FAA displaces state law. AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 341 (2011).

4

### 1. Procedural Unconscionability

A determination of procedural unconscionability involves the analysis of two factors: (1) oppression; and (2) surprise. Id. at 1280. Oppression is found when there is such an inequality in bargaining power between two parties that there is no actual negotiation and a lack of meaningful choice. Id. Surprise is found when the "supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them." Id. (quoting Flores v. Transamerica HomeFirst, Inc., 93 Cal. App. 4th 846, 853 (2001)).

Plaintiffs' only argument for procedural unconscionability hinges on the Terms of Use being a contract of adhesion, giving Plaintiffs "no ability to negotiate its terms." Opp'n (dkt. 25) at 7. As a preliminary matter, California courts consider contracts of adhesion procedurally unconscionable to at least a minimal degree due to a lack of bargaining power. Bridge Fund Cap. Corp., 622 F.3d at 1004. However, California courts only refuse to enforce contracts of adhesion if they are "unduly oppressive." Armendariz, 24 Cal. 4th at 113. But, crucially, Plaintiffs argue only that the arbitration provision in Lensa's Terms of Use is unconscionable, see Opp'n at 7–9, and that provision allows users to opt out of binding arbitration by mailing a notification of their intent to do so to Lensa within 30 days. See Terms of Use at 10–11.

The Ninth Circuit has squarely held that where there is a meaningful opportunity to opt out of an arbitration agreement, that agreement is not adhesive. Mohamed v. Uber Techs., Inc., 848 F.3d 1201, 1211 (9th Cir. 2016) (citing Circuit City Stores, Inc. v. Ahmed, 283 F.3d 1198, 1199 (9th Cir. 2002)). While Mohamed and Ahmed addressed employment contracts, courts have routinely applied the same principles to consumer contracts like Lensa's. See James v. Comcast Corp., No. 16-CV-02218-EMC, 2016 WL 4269898, at *3 (N.D. Cal. Aug. 15, 2016); Mohammad v. T-Mobile USA, Inc., No. 2:18-CV-00405-KJM-DB, 2018 WL 6249910, at *5 (E.D. Cal. Nov. 29, 2018); Lag Shot LLC v. Facebook, Inc., 545 F. Supp. 3d 770, 779–80 (N.D. Cal. 2021); McLellan v. Fitbit, Inc., No. 3:16-CV-00036-JD, 2017 WL 4551484, at *3 (N.D. Cal. Oct. 11, 2017); Alkutkar v.

5

Bumble Inc., No. 22-CV-00422-PJH, 2022 WL 4112360, at *9 (N.D. Cal. Sept. 8, 2022), reconsideration denied, No. 22-CV-00422-PJH, 2022 WL 16973253 (N.D. Cal. Nov. 16, 2022). After all, employees signing employment contracts might feel inclined not to opt out of an arbitration provision for fear of rocking the boat with a new employer. See, e.g., Gentry v. Superior Ct., 42 Cal. 4th 443, 472 (2007) ("Given the inequality between employer and employee and the economic power that the former wields over the latter, it is likely that Circuit City employees felt at least some pressure not to opt out of the arbitration agreement." (internal citation omitted)). But a consumer is not apt to have the same hesitation when deciding whether to opt out of arbitration against a photo editing app. See James, 2016 WL 4269898, at *3 ("This case concerns a non-essential service, not a source of one's livelihood."). The Court therefore concludes that, because Plaintiffs had a meaningful opportunity to opt out of the arbitration provision, the agreement was not adhesive.

Additionally, while Plaintiffs do not argue the surprise element of procedural unconscionability, the Court holds that there was no surprise.[5] The Terms of Use is short and written in legible font; the arbitration provision, like all sections of the agreement, is bolded and clearly labelled "Dispute Resolution; Binding Arbitration"; underneath that heading, a bold statement instructs users: "Please read the following section carefully because it requires you to arbitrate certain disputes and claims with the company and limits the manner in which you can seek relief from us." The opt-out provision, while not bolded, is clearly written in the same legible font as the rest of the agreement, and included in the arbitration provision itself, not hidden elsewhere in the agreement. In all, the arbitration provision is not "hidden in a prolix printed form" such that a user could claim surprise. Nagrampa, 469 F.3d at 1280.

Therefore, "[b]ecause the agreement[] [is] not procedurally unconscionable, and

---

[5] Indeed, in Mohamed, the Ninth Circuit did not even discuss the surprise element when deciding that the arbitration provision at issue was not procedurally unconscionable. See 848 F.3d at 1211 ("The fact that the opt-out provision was 'buried in the agreement' does not change this analysis.").

6

because both procedural and substantive unconscionability must be present in order for an agreement to be unenforceable, we need not reach the question whether the agreement[] here [was] substantively unconscionable." Mohamed, 848 F.3d at 1211 (internal citation omitted).

### B.     Illusory

Second, Plaintiffs argue that, because two aspects of the arbitration provision in Lensa's Terms of Use arguably do not meet JAMS' Consumer Arbitration Minimum Standards, there was no meeting of the minds as to the arbitration provision in the contract. As Plaintiffs put it: "The parties cannot have agreed to an arbitration before JAMS that JAMS will not hear."  Opp'n at 5.  Defendants make three arguments in response: First, that by incorporating the JAMS Streamlined Arbitration Rules,[6] the parties agreed to arbitrate arbitrability; second, the provisions in question—the location of the arbitration and how the arbitrator's fees will be paid—do not conflict with the JAMS Rules; and third, that the offending provisions are severable.

#### 1.     Agreement to Arbitrate Arbitrability

In general, parties may delegate questions of arbitrability to the arbitrator, if by "clear and unmistakable evidence," the parties have chosen to do so.  See Brennan v. Opus Bank, 796 F.3d 1125, 1130 (9th Cir. 2015); see also Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 530 (2019) ("[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue.").  The Ninth Circuit has held that, at least in cases concerning sophisticated parties, incorporation of arbitration rules that delegate questions of arbitrability to the arbitrator "constitutes clear and unmistakable evidence that the contracting parties agreed to arbitrate arbitrability." Brennan, 796 F.3d at 1130; see also Oracle America, Inc. v. Myriad Group

---

[6] See JAMS Streamlined Arbitration Rules § 8(b) ("Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator.  The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.").

1    A.G., 724 F.3d 1069, 1074 (9th Cir. 2013) ("Virtually every circuit to have considered the
2    issue has determined that incorporation of the American Arbitration Association's (AAA)
3    arbitration rules constitutes clear and unmistakable evidence that the parties agreed to
4    arbitrate arbitrability."). However, because Brennan and Oracle America involved
5    sophisticated parties, they left open the question of whether incorporation of arbitration
6    rules in consumer contracts similarly constitutes "clear and unmistakable evidence" of
7    intent to arbitrate arbitrability, and courts are split on the issue. Brennan, 796 F.3d at 1130
8    ("[O]ur holding does not foreclose the possibility that this rule could also apply to
9    unsophisticated parties or to consumer contracts."); compare, e.g., Luckert v. Tesla Energy
10   Operations, Inc., No. 21-CV-03027-VC, 2021 WL 3721967, at *1 (N.D. Cal. Aug. 5,
11   2021) (applying Brennan to a consumer contract without regard to the consumer's
12   sophistication), with Mikhak v. Univ. of Phoenix, No. C16-00901 CRB, 2016 WL
13   3401763, at *5 (N.D. Cal. June 21, 2016) (weighing the plaintiff's sophistication and
14   concluding that because "[s]uch a barrage of materials might understandably seem
15   confusing to an individual without experience reviewing legal documents or negotiating
16   employment contracts," incorporation of AAA rules was not evidence of a clear and
17   unmistakable intent to delegate arbitrability to the arbitrator).

18   The Court cannot conclude on this record that the parties clearly and unmistakably
19   agreed to arbitrate arbitrability. While the parties' briefing does not discuss the parties'
20   sophistication (or lack thereof) in any depth, nothing in the complaint indicates that, as lay
21   users of a photo editing app, the Plaintiffs understood that by incorporating JAMS'
22   Streamlined Arbitration Rules, that they were delegating gateway issues of arbitrability to
23   a JAMS arbitrator.[7] The Court therefore declines to extend Brennan to this case and
24   proceeds to decide gateway questions of arbitrability.

25          **2.**    **Conflicting Terms**
26   Plaintiffs argue that two terms of the arbitration provision are incompatible with

---

[7] The fact that one of the plaintiffs is a minor only further underscores this point.

8

1  JAMS' Consumer Arbitration Minimum Standards: First, the forum selection clause
2  requiring that arbitration take place in Santa Clara County; and second, incorporation of
3  JAMS' Streamlined Arbitration Rules requires that the parties are jointly and severally
4  liable for the arbitrator's fees.

### a. Location of Arbitration

While Lensa's Terms of Use states that "all disputes . . . will be resolved through confidential binding arbitration held in Santa Clara County, California," JAMS Arbitration Minimum Standards require that "[t]he consumer must have a right to an in-person hearing in his or her hometown area," which, in this case, is in Illinois.[8] See Compl. ¶¶ 3–7.

Prisma's arguments that these provisions are not in conflict are unpersuasive. Prisma first argues that "forum selection clauses are presumed to be non-exclusive absent an express statement to the contrary," citing In re 1250 Oceanside Partners, 652 F. App'x 588 (9th Cir. 2016). Reply (dkt. 27) at 12. That case, and the cases it relies upon, concern a much more permissive forum selection clause than the one at issue here. Compare Oceanside Partners, 652 F. App'x at 589 ("[Plaintiff] may seek to foreclose on the property . . . by a foreclosure action filed in the Circuit Court of the Third Circuit, State of Hawaii[.]"); with Terms of Use at 10 ("[A]ll disputes arising out of or relating to these Terms or Lensa will be resolved through confidential binding arbitration held in Santa Clara County, California . . . ."). Prisma next argues that "it is unlikely that JAMS would refuse to arbitrate the case" based on the conflict between the forum selection clause and JAMS' minimum standards. Reply at 12–13. But Prisma provides no authority from JAMS or elsewhere to underpin that assumption.[9] Therefore, on their face, it appears that

---

[8] Consumer Arbitration Minimum Standards, JAMS (July 15, 2009), https://www.jamsadr.com/consumer-minimum-standards/. Because it is "not subject to reasonable dispute," the Court takes judicial notice of JAMS' Consumer Arbitration Minimum Standards. See Fed. R. Evid. 201(b); Khoja, 899 F.3d at 999.

[9] It is not lost on the Court that the Plaintiffs bring this action "exactly where the forum selection clause would have them undergo arbitration." Zaborowski v. MHN Gov't Servs., Inc., 936 F. Supp. 2d 1145, 1156 (N.D. Cal. 2013); Cobarruviaz v. Maplebear, Inc., 143 F. Supp. 3d 930, 942 (N.D. Cal. 2015). Nevertheless, the Court cannot ignore the manifest conflict between the Terms of Use and JAMS' minimum standards.

the forum selection clause in Lensa's terms and in JAMS' minimum standards are in conflict. See Nguyen v. OKCoin USA Inc., No. 22-CV-06022-KAW, 2023 WL 2095926, at *3 (N.D. Cal. Feb. 17, 2023) (holding that "any delegation clause to JAMS [is] effectively void" in part because requiring that the arbitration be conducted in San Francisco does not comport with JAMS' minimum standards).

### b. Arbitrator's Fees

Plaintiffs further contend that, because the agreement incorporates JAMS' Streamlined Arbitration Rules—and these rules make the parties "jointly and severally liable for the payment of JAMS Arbitration fees and Arbitrator compensation and expenses"—that the fee provision of the agreement is also in violation of JAMS' minimum standards. Opp'n at 5 (quoting JAMS Streamlined Arbitration Rules § 26(c)). This contorted reading of the agreement and JAMS' rules does not stand up to scrutiny.

JAMS' Consumer Arbitration Minimum Standards requires that "when a consumer initiates arbitration against the company, the only fee required to be paid by the consumer is $250, . . . [and] [a]ll other costs must be borne by the company, including any remaining JAMS Case Management Fee and all professional fees for the arbitrator's services." JAMS' Consumer Arbitration Minimum Standards ¶ 7. Lensa's Terms of Use repeats this requirement almost verbatim: "You and the Company agree that for any arbitration you initiate, you will pay the filing fee and the Company will pay the remaining JAMS fees and costs." Terms of Use at 10. However, JAMS' Streamlined Arbitration Rules require that "[t]he Parties are jointly and severally liable for the payment of JAMS Arbitration fees and Arbitrator compensation and expenses." JAMS Streamlined Arbitration Rules § 26(c). Plaintiffs argue that by incorporating JAMS' Streamlined Arbitration Rules, the parties have incorporated Rule 26(c), and thus the agreement fails to meet JAMS' minimum standards—effectively arguing, as Prisma points out, that JAMS' Streamlined Arbitration Rules are incompatible with its Consumer Arbitration Minimum Standards.

Putting aside the absurdity of that contention, the plain language of the Terms of Use indicates that the parties intended to comply with JAMS' minimum standards. The statement in the agreement that "for any arbitration [the user] intiate[s]," the user will pay the filing fee and the Company will pay "the remaining JAMS fees and costs," Terms of Use at 10, clearly indicates that the user will pay the filing fee JAMS requires of consumers—i.e., the $250 payment mentioned in JAMS' minimum standards[10]—and Prisma will pay for everything else. Incorporation of the JAMS Streamlined Arbitration Rules does not alter this clear reading—indeed, one provision of those rules allows the parties to craft their own. See JAMS Streamlined Arbitration Rules § 2(a) ("The Parties may agree on any procedures not specified herein or in lieu of these Rules that are consistent with the applicable law and JAMS policies (including, without limitation, Rules 12(j), 25 and 26)."). That is precisely what the parties apparently did here, to comply with JAMS' minimum standards. As a result, there is no conflict between the fee provision in the Terms of Use and JAMS' minimum standards.

### c. Severability

Because the Court has determined that one provision Plaintiffs challenge—the forum selection clause—conflicts with JAMS' minimum standards, it must decide whether that provision is severable,[11] and the arbitration provision may otherwise be enforced despite the conflict. The Court concludes that the forum selection clause may be severed, and arbitration administered by JAMS may go forward.

To determine whether an unlawful contract may be cured through severance, "[c]ourts are to look to the various purposes of the contract." Armendariz, 24 Cal. 4th at 124. "If the central purpose of the contract is tainted with illegality, then the contract as a

---

[10] Arbitration Schedule of Fees and Costs, JAMS, https://www.jamsadr.com/arbitration-fees (last visited Aug. 8, 2023) ("For matters involving consumers, the consumer is only required to pay $250. See JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses.").

[11] Lensa's Terms of Use contains a severability clause. See Terms of Use at 14 ("If any provision of these Terms is held invalid and unenforceable . . . that provision will be enforceable to the maximum extent permissible and the other provisions of these terms will remain in full force and effect.").

11

1   whole cannot be enforced." Id.  In the context of unconscionable forum selection clauses
2   in arbitration provisions, courts routinely hold that such clauses are severable because they
3   "d[o] not relate to the 'agreement's chief objective.'" Lang v. Skytap, Inc., 347 F. Supp.
4   3d 420, 432–33 (N.D. Cal. 2018) (quoting Armendariz, 24 Cal.4th at 124–25).  See also
5   Pope v. Sonatype, Inc., No. 5:15-CV-00956-RMW, 2015 WL 2174033, at *6 (N.D. Cal.
6   May 8, 2015) ("Although Sonatype inserted two clauses that appear to conflict with JAMS
7   rules, simply severing those provisions or interpreting them as not applicable in California
8   and proceeding under the incorporated JAMS rules cures the unconscionability as to those
9   terms and preserves the intent of the Agreement."); Fitzgerald v. Grand Circle, LLC, No.
10  CV 20-2586, 2020 WL 6152027, at *4 (E.D. Pa. Oct. 20, 2020) ("Clauses regarding forum
11  location and fee-splitting are logistical concerns and can be severed while maintaining the
12  core agreement to arbitrate.").  Where courts have chosen not to sever a forum selection
13  clause, they have done so where there are multiple unlawful terms that render the
14  arbitration agreement "tainted with illegality." See, e.g., Streedharan v. Stanley Indus. &
15  Auto., LLC, 630 F. Supp. 3d 1244, 1274 (C.D. Cal. 2022) (finding that "multiple
16  unconscionable provisions," including the forum selection provision, may not be severed);
17  Lim v. TForce Logistics, LLC, 8 F.4th 992, 1006 (9th Cir. 2021) ("[G]iven the pervasive
18  unconscionability of the delegation clause based on multiple unconscionable provisions—
19  the cost-splitting, fee-shifting, and Texas venue provisions—the district court did not
20  abuse its discretion by not severing those unconscionable terms.").

21          Because there are no other terms that conflict with JAMS' minimum standards, and
22  because the forum selection provision can easily be severed without affecting any other
23  provision, the Court severs that provision and enforces the arbitration agreement as
24  otherwise agreed upon by the parties.[12]

---

[12] In the absence of a forum selected by the parties in the Terms of Use, the arbitrator will likely refer to the incorporated JAMS Streamlined Arbitration Rules, which allow the arbitrator, after consulting with the parties, to "determine the date, time and location of the Hearing." JAMS Streamlined Arbitration Rules § 14(a).  The arbitrator would then, consistent with JAMS' minimum standards, offer Plaintiffs the opportunity to have the hearing in their "hometown area" in Illinois.  JAMS Consumer Arbitration Minimum Standards ¶ 7.

## IV. CONCLUSION

For the foregoing reasons, Prisma's motion to compel is GRANTED. This case is hereby stayed pending arbitration pursuant to 9 U.S.C. § 3.

**IT IS SO ORDERED.**

Dated: August 8, 2023



CHARLES R. BREYER
United States District Judge